# EXHIBIT 2

*John Hancock®*

Life Insurance Company (U.S.A.)
A Stock Company

| | |
|---|---|
| **LIFE INSURED** | ▮▮▮▮▮▮▮▮ |
| **POLICY NUMBER** | 93 529 212 |
| **PLAN NAME** | Performance UL |

**FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**
ADJUSTABLE DEATH BENEFIT
BENEFIT PAYABLE ON LIFE INSURED'S DEATH
FLEXIBLE PREMIUMS PAYABLE TO AGE 121 DURING THE LIFE INSURED'S LIFETIME
NON-PARTICIPATING (NOT ELIGIBLE FOR DIVIDENDS)

Subject to the conditions and provisions of this policy, if the Life Insured dies while the policy is in force, the John Hancock Life Insurance Company (U.S.A.) ("the Company") agrees to pay the Insurance Benefit to the beneficiary in a lump sum, and to provide the other benefits, rights, and privileges, if any, of the policy. The Insurance Benefit is described in Section 6. If the Company makes other plans of payment available other than a lump sum, then a Beneficiary may request written election of any such other plans in lieu of a lump sum.

**READ YOUR POLICY CAREFULLY. It is a contract between you and us.**

**RIGHT TO RETURN POLICY. If for any reason you are not satisfied with your policy, you may return it for cancellation within TEN days after receiving it by delivering or mailing it to us or to the agent who sold it. We will refund in full the payment made. The policy will be void from the beginning.**

Signed for the Company by:

**President**                    **Secretary**

06PERFUL                                                    PU016ATX

**Policy Provisions**

**Section**

1.   Policy Specifications

2.   Table of Rates

3.   Definitions

4.   Qualification as Life Insurance

5.   Total Face Amount

6.   Insurance Benefit

7.   Interest On Proceeds

8.   Premiums

9.   No-Lapse Guarantee

10.  Grace Period

11.  Policy Termination

12.  Reinstatement

13.  Coverage at and after Age 121

14.  Policy Value

15.  Loan Account and Guaranteed Interest Account

16.  Loans

17.  Surrenders and Withdrawals

18.  Owner and Beneficiary

19.  Assignment

20.  Misstatements

21.  Suicide

22.  Incontestability

23.  The Contract

24.  Right to Postpone Payment of Benefits

25.  Claims Of Creditors

26.  Reports To Owner

27.  How Values Are Computed

## 1. POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| **Life Insured** | ██████████ | **Plan Name** | Performance UL |
| **Age at Policy Date** | 75 | **Policy Number** | 93 529 212 |
| **Sex** | Female | **Issue Date** | September 28, 2007 |
| **Risk Classification** | Preferred Non Smoker | **Policy Date** | September 28, 2007 |

**Additional Ratings**   Not Applicable

**Owner, Beneficiary**   As designated in the application or subsequently changed

**Death Benefit Option at Issue**   Option 1

**Life Insurance Qualification Test Elected**   Cash Value Accumulation Test

|  |  |
|---|---|
| Base Face Amount at Issue | $7,000,000.00 |
| Supplemental Face Amount at Issue | $3,000,000.00 |
| Total Face Amount at Issue | $10,000,000.00 |

**Governing Law**   Texas

### PREMIUMS AT ISSUE

**Premium Mode**   Annual

**Planned Premium**
1. $250,000.00 for year 1 - 1
2. $262,294.00 for years 2 - 25
3. $0.00 thereafter

**Minimum Initial Premium**   $18,708.57

**No-Lapse Guarantee Premium**   $224,502.87 per year

Notice:  This policy provides life insurance coverage for the lifetime of the Life Insured if sufficient premiums are paid.  Premium payments in addition to the planned premium shown may need to be made to keep this policy and coverage in force.  Keeping the policy and coverage in force will be affected by factors such as:  changes in the current cost of insurance rates; the amount, timing and frequency of premium payments; the interest rate being credited to the Guaranteed Interest Account; changes to the death benefit option; changes in the Total Face Amount; loan activity; withdrawals; and deductions for any applicable Supplementary Benefit riders that are attached to, and made a part of, this policy.  Also refer to the Grace Period and Policy Termination provisions in Sections 10 and 11.

You may pay premiums until the Life Insured reaches Age 121, at which time Monthly Deductions will cease and no further premiums may be paid.

3.0                                                                                                                    PU036ATX

**THIS PAGE INTENTIONALLY LEFT BLANK**

PU03106A

**1. POLICY SPECIFICATIONS** (continued) - Policy 93 529 212

<u>**OTHER BENEFITS AND SPECIFICATIONS**</u>

Not Applicable

PU03206A

**1. POLICY SPECIFICATIONS** (continued) - Policy 93 529 212

<u>MAXIMUM EXPENSE CHARGES</u>

**Deductions from Premium Payments**

      **Premium Charge**    8% of each premium paid

**Monthly Deductions:** the following charges are deducted monthly from the Policy Value

| **Administrative Charge** | <u>Policy Years</u> | <u>Dollar amount</u> |
|---|---|---|
| | 1 | $25.00 |
| | 2+ | $10.00 |

| | |
|---|---|
| **Face Amount Charge** | $0.5000 per $1,000 of Base Face Amount for the first 10 Policy Years. |
| **Cost of Insurance Charge** | Determined in accordance with Section 14.   Maximum monthly rates per $1,000 are shown in Section 2. |

**Other Charges**

| | |
|---|---|
| **Surrender Charge** | Charge deducted from the Policy Value during the Surrender Charge Period. See Sections 5 and 17 for details of when a Surrender Charge applies. |
| | The Surrender Charge for the Base Face Amount at Issue is $135,839.45. |
| | The Surrender Charge will reduce monthly over the Surrender Charge Period until it becomes zero.   The table below shows the applicable grading percentage at the beginning of each Policy Year during the Surrender Charge Period (proportionate grading percentages apply for other Policy Months).   The amount to which the Surrender Charge is reduced at any time is determined by multiplying the initial amount of Surrender Charge by the percentage that is applicable at that interval during the Surrender Charge Period. |

| **Surrender Charge Period (Policy Year)** | **Maximum Percentage of Surrender Charge** | **Surrender Charge Period (Policy Year)** | **Maximum Percentage of Surrender Charge** |
|---|---|---|---|
| 1 | 100.00% | 9 | 87.50% |
| 2 | 100.00% | 10 | 75.00% |
| 3 | 100.00% | 11 | 62.50% |
| 4 | 100.00% | 12 | 50.00% |
| 5 | 100.00% | 13 | 37.50% |
| 6 | 100.00% | 14 | 25.00% |
| 7 | 100.00% | 15 | 25.00% |
| 8 | 87.50% | 16 | 0.00% |

| | |
|---|---|
| **Supplementary Benefit Rider Charges** | Charges for applicable riders are shown under Supplementary Benefits of this Section 1. |
| **Withdrawal Fee** | $25.00 per withdrawal |

**1. POLICY SPECIFICATIONS** (continued) - Policy 93 529 212

<u>TABLE OF VALUES</u>

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| Minimum Total Face Amount | $ 100,000 |
| Minimum Base Face Amount | $ 100,000 |
| Minimum Base Face Amount Decrease | $   10,000 |
| No-Lapse Guarantee Period | |
| *Base Face Amount | First 9 Policy Years from Policy Date |
| Supplemental Face Amount (if elected) | First 2 Policy Years from Policy Date |
| Guaranteed Interest Account Annual Rate | Not less than 3% |
| Loan Interest Rate | As defined in Section 16 |
| Maximum Loan Interest Credited Differential | |
| Policy Years 1-10 | 1.25% |
| Policy Years    11+ | .25% |
| Minimum Loan Amount | $500 |
| Minimum Withdrawal Amount | $500 |
| Death Benefit Discount Factor | 1.0024663 |
| Partial Surrender Charge Decrease Exemption | 10% |

*Electing to increase the Supplemental Face Amount after the Policy Date may reduce this period.  Refer to
  Section 5 for details.

PU03B06A

## 2. TABLE OF RATES - Policy 93 529 212

### A. RATE TABLE

| Age | Maximum Monthly Rates per $1,000 of Net Amount at Risk | Minimum Death Benefit Factors | Age | Maximum Monthly Rates per $1,000 of Net Amount at Risk | Minimum Death Benefit Factors |
|-----|-----|-----|-----|-----|-----|
| 75 | 2.2475 | 1.6088 | | | |
| 76 | 2.4690 | 1.5717 | | | |
| 77 | 2.7134 | 1.5362 | | | |
| 78 | 2.9843 | 1.5022 | | | |
| 79 | 3.2776 | 1.4697 | | | |
| 80 | 3.6065 | 1.4385 | | | |
| 81 | 4.0550 | 1.4087 | | | |
| 82 | 4.5636 | 1.3807 | | | |
| 83 | 5.0733 | 1.3545 | | | |
| 84 | 5.6400 | 1.3297 | | | |
| 85 | 6.2826 | 1.3063 | | | |
| 86 | 6.8695 | 1.2842 | | | |
| 87 | 7.7603 | 1.2628 | | | |
| 88 | 8.7003 | 1.2431 | | | |
| 89 | 9.7133 | 1.2247 | | | |
| 90 | 10.6571 | 1.2076 | | | |
| 91 | 11.1384 | 1.1910 | | | |
| 92 | 12.0927 | 1.1733 | | | |
| 93 | 13.5274 | 1.1552 | | | |
| 94 | 15.3719 | 1.1374 | | | |
| 95 | 17.7024 | 1.1197 | | | |
| 96 | 19.9736 | 1.1022 | | | |
| 97 | 22.3736 | 1.0836 | | | |
| 98 | 22.7915 | 1.0623 | | | |
| 99 | 24.2041 | 1.0350 | | | |
| 100 | 26.4942 | 1.0000 | | | |
| 101 | 29.0028 | 1.0000 | | | |
| 102 | 31.8878 | 1.0000 | | | |
| 103 | 35.1432 | 1.0000 | | | |
| 104 | 38.8726 | 1.0000 | | | |
| 105 | 43.0924 | 1.0000 | | | |
| 106 | 47.6414 | 1.0000 | | | |
| 107 | 52.5635 | 1.0000 | | | |
| 108 | 57.8160 | 1.0000 | | | |
| 109 | 63.6520 | 1.0000 | | | |
| 110 | 70.0659 | 1.0000 | | | |
| 111 | 76.7256 | 1.0000 | | | |
| 112 | 83.3333 | 1.0000 | | | |
| 113 | 83.3333 | 1.0000 | | | |
| 114 | 83.3333 | 1.0000 | | | |
| 115 | 83.3333 | 1.0000 | | | |
| 116 | 83.3333 | 1.0000 | | | |
| 117 | 83.3333 | 1.0000 | | | |
| 118 | 83.3333 | 1.0000 | | | |
| 119 | 83.3333 | 1.0000 | | | |
| 120 | 83.3333 | 1.0000 | | | |
| 121 | 0.0000 | 1.0000 | | | |

For attained Age 122 and above, the Maximum Monthly Rate per $1,000 of Net Amount of Risk is 0 and the Minimum Death Benefit Factor is 1.0000.
The rates shown above are based on the Life Insured's Risk Classification as shown in Section 1.
Maximum Monthly Rates are the same for the Base Face Amount and the Supplemental Face Amount and have been adjusted for any applicable Additional Ratings that are applied to the Cost of Insurance rates as shown in Section 1.

PU046ATX

## 3. DEFINITIONS

The term "**Additional Rating**" is an increase in the Cost of Insurance that is applied when a Life Insured does not meet, at a minimum, our underwriting requirements for the standard Risk Classification.

The term "**Age**" means, on any policy anniversary, the age of the person in question at his or her birthday nearest that date.

The term "**Annual Processing Date**" means every 12th Processing Date starting with the Processing Date next after the Policy Date.

The term "**Business Day**" means any day that we are open for business.

The term "**Cash Surrender Value**" equals the Policy Value less the Surrender Charge.

The term "**date**" means a calendar day ending at midnight local time at our Service Office.

The term "**Guaranteed Interest Account**" is that part of the Policy Value which reflects the value you have in our general account.

The term "**in force**" means that the policy has not terminated in accordance with Sections 9, 10, or 11, or surrendered in accordance with Section 17.

The term "**Issue Date**" is the date shown in the Policy Specifications of this policy from which the Suicide and Incontestability provisions are applied.

The term "**Loan Account**" is that part of the Policy Value which reflects amounts transferred from the Guaranteed Interest Account as collateral for a policy loan.

The term "**Minimum Initial Premium**" means the minimum premium needed to put the policy in force and is shown in Section 1.

The term "**Net Cash Surrender Value**" equals the Cash Surrender Value less the Policy Debt.

The term "**Net Premium**" is the gross premium paid less any Premium Charge.

The term "**Partial Surrender Charge Decrease Exemption**" is the percentage of the Base Face Amount at Issue as shown in Section 1 in the Table of Values. This percentage is set at issue of the policy. This exemption applies to cumulative decreases in the Base Face Amount of insurance. Once cumulative decreases exceed this exemption, applicable Surrender Charges will apply. The exemption is not applicable to a full surrender of the policy or Net Cash Surrender Value withdrawals.

The term "**Planned Premium**" means the premium that is selected in the application for the policy, which is intended to be paid on a regular modal basis.

The term "**Policy Date**" is the date from which charges for the first Monthly Deduction are calculated. The Policy Date is shown in Section 1. Policy Years, Policy Months, and Policy Anniversaries are determined from the Policy Date.

The term "**Policy Debt**" as of any date equals (a) plus (b) plus (c), minus (d), where:

(a)  is the total amount of loans borrowed as of such date;

(b)  is the total amount of any unpaid loan interest charges borrowed against the policy on a Policy Anniversary;

(c)  is any interest charges accrued from the last Policy Anniversary to the current date; and

(d)  is the total amount of loan repayments as of such date.

The term "**Policy Value**" is the sum of the values in the Loan Account and the Guaranteed Interest Account.

The term "**Policy Year**" means (a) or (b) below whichever is applicable.

(a)  The first Policy Year is the period beginning on the Policy Date and ending on the Business Day immediately preceding the first Annual Processing Date.

(b)  Each subsequent Policy Year is the period beginning on an Annual Processing Date and ending on the Business Day immediately preceding the next Annual Processing Date.

The term "**Processing Date**" means the first day of a Policy Month. A Policy Month shall begin on the day in each calendar month that corresponds to the day of the calendar month on which the Policy Date occurred. The Policy Date is not a Processing Date.

PU056ATX

## 3. DEFINITIONS (continued)

The term **"Service Office"** is the office that we designate to service this policy as shown on the back cover of your policy.

The term **"Surrender Charge Period"** is the period during which we will assess surrender charges beginning on the Policy Date and ending when the surrender charge is equal to zero. Surrender charges apply during this period if you surrender the policy, request a decrease in the Base Face Amount which exceeds the Partial Surrender Charge Decrease Exemption, make a withdrawal that reduces the Base Face Amount, or if the policy terminates due to default. The Surrender Charge Period is shown in Section 1.

The terms **"we"**, **"us"**, and **"our"** refer only to the Company.

The term **"written request"** is your request to us which must be in a form satisfactory to us, signed and dated by you, and filed at our Service Office or, if permitted by our administrative practices, an electronic mail message ("e-mail") received by us at the internet address specified by us for receipt of such messages.

The terms **"you"** and **"your"** refer only to the Owner of this policy.

## 4. QUALIFICATION AS LIFE INSURANCE

It is the intent that this policy be considered as life insurance for federal income tax purposes, notwithstanding any other provisions of the policy to the contrary, in order to comply with Section 7702 of the Internal Revenue Code of 1986, or any other equivalent section of the Code. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy if it becomes necessary to allow it to qualify as life insurance. This provision should not be construed to guarantee that this policy will receive tax treatment as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority. In order for this policy to qualify as life insurance, one of the following tests will apply to the policy. The test you elected is shown in Section 1. Your election cannot be changed after issue.

**Guideline Premium Test**

Under this test, if at any time the premiums received under the policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount is not refunded by then, the Total Face Amount under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating but only if such premium payment would result in a zero Policy Value at the end of the policy year. In addition, the Minimum Death Benefit, as described in Section 6, must be maintained.

**Cash Value Accumulation Test**

Under this test, the Minimum Death Benefit, as described in section 6, must be maintained. We reserve the right to modify the Minimum Death Benefit Factors shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of this policy to the contrary.

**Effect on Life Insurance Qualification Tests**

A change in Death Benefit Option or Total Face Amount, or certain other policy changes, will often change the policy's limits under the Life Insurance Qualification Test that you elected.

We reserve the right to refuse or limit any request for a change if the change would cause the policy to fail to qualify as life insurance for tax purposes.

**Tax Considerations**

We do not give tax advice, and this provision should not be construed to guarantee that the policy will be treated as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority.

**After Age 121, the policy may no longer qualify as life insurance and may be subject to tax consequences.**

**Your qualifying status rather than the insurance policy is the controlling factor as to whether your insurance proceeds will receive tax favored treatment. Please ask a tax specialist if you have any questions as to whether or not you qualify.**

5

## 5. TOTAL FACE AMOUNT

The Total Face Amount is made up of two components: (i) the Base Face Amount, and (ii) any Supplemental Face Amount. Minimum Base Face Amount and the minimum Total Face Amount limits are shown in Section 1. Scheduled increases in any Supplemental Face Amount are elected on the application and if approved, their amounts, when they are to become effective and the Maximum Increasing Supplemental Face Amount will be shown in Section 1. If you request to cancel a scheduled increase, or request a decrease in your Supplemental Face Amount, that request will be honored but all scheduled increases for subsequent policy years will cease. Future increases to Supplemental Face Amount will be subject to the Company's normal underwriting practices. After the first Policy Year, while the Life Insured is alive and the policy is in force, unscheduled changes to the Supplemental Face Amount may be requested in writing. We reserve the right to limit the number of such unscheduled changes to one per Policy Year. We also reserve the right to limit the maximum and minimum amounts of unscheduled changes. All requested changes will be subject to our approval. You may not increase your Base Face Amount of insurance under this policy.

**Increase in Supplemental Face Amount**

As a condition of our approval of any unscheduled increase in Supplemental Face Amount, we may require evidence of insurability satisfactory to us. A minimum premium payment may also be required. When a requested change becomes effective, and if required by our then current rules, a change in future Planned Premiums will automatically be affected to comply with those rules. Any change will be effective on the next Annual Processing Date after our approval. If an increase in Supplemental Face Amount is elected and approved after the Policy Date, any remaining No Lapse Guarantee Period for the Base Face Amount will be reduced to zero.

**Reduction of Total Face Amount**

You may request a reduction in Total Face Amount any time after the first Policy Year while this policy is in force. Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount. We reserve the right to allow a reduction in Base Face Amount first. If there is a reduction in Base Face Amount, a charge may be deducted from the Policy Value. This charge will be equal to a proportionate part of the Surrender Charge that would have applied if the policy had been surrendered on the date the reduction in Base Face Amount takes effect. The proportion will be equal to the amount of the reduction in Base Face Amount which exceeds the Partial Surrender Charge Decrease Exemption divided by the amount of Base Face Amount in effect immediately before the reduction, less any applicable Partial Surrender Charge Decrease Exemption. This charge will also apply if a withdrawal, as described in Section 17, results in a reduction in Base Face Amount. Without our prior approval, the Base Face Amount cannot be reduced below the minimum as shown in Section 1. Any reduction in Supplemental Face Amount or Base Face Amount will be effective on the next Processing Date after our approval.

## 6. INSURANCE BENEFIT

If the Life Insured dies while the policy is in force, we will pay the Insurance Benefit within two months of receiving due proof of death of the Life Insured and the right of the claimant to the policy proceeds, subject to any applicable provisions of the policy. If the Life Insured dies on or after the date we receive a request from you to surrender the policy, no Insurance Benefit will be paid. We will pay the amount payable under the Surrenders and Withdrawals provision instead.

**Insurance Benefit**

The Insurance Benefit payable is:

    (a)    the Death Benefit as described below; plus

    (b)    any amounts payable under any Supplementary Benefit riders as a result of the Life Insured's death that form part of the contract; less

    (c)    any outstanding Policy Debt at the date of death.

If the Life Insured dies during a grace period, the Insurance Benefit payable described above will be modified as follows:

    (a)    the Insurance Benefit will be reduced by any outstanding Monthly Deductions due; and

    (b)    the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the date of death of the Life Insured.

## 6. INSURANCE BENEFIT (continued)

**Death Benefit**

The Death Benefit will depend on whether Option 1 or Option 2 is in effect on the date of the Life Insured's death.

**Death Benefit Options**

Under Option 1, the Death Benefit is equal to the Total Face Amount at the date of death of the Life Insured. Under Option 2, the Death Benefit is equal to the Total Face Amount at the date of death of the Life Insured plus the Policy Value at the date of death of the Life Insured.

The Death Benefit after the Life Insured's Attained Age 121 will be as described in Section 13.

If any withdrawals are made, the Death Benefit, whether Option 1 or Option 2 is in effect, will be less than it would have been if no withdrawals were made. Withdrawals reduce the Death Benefit by reducing:

    (a)    the Total Face Amount if Option 1 is in effect, as specified in Section 17; or

    (b)    the Policy Value if Option 2 is in effect.

**Change of Death Benefit Options**

You may request in writing to change your Death Benefit Option at any time after the first Policy Year while the policy is in force, subject to the Minimum Base Face Amount shown in Section 1. For a change from Option 1 to Option 2, the change will be effective on the next Annual Processing Date following the date we approve the request, and the Total Face Amount after the change will be equal to the Total Face Amount immediately before the change minus the Policy Value as of the effective date of the change.

For a change in Option 2 to Option 1, the change will be effective on the next Processing Date following the date we approve the request, and the Total Face Amount after the change will be equal to the Total Face Amount immediately before the change plus the Policy Value as of the effective date of the change.

**Minimum Death Benefit**

The sum of the Death Benefit as described above and the Death Benefit payable under any Supplementary Benefit riders will never be less than the Minimum Death Benefit. The Minimum Death Benefit is equal to the Policy Value on the date of death multiplied by the Minimum Death Benefit Factor for the Age of the Life Insured. The Minimum Death Benefit Factors are shown in Section 2. To the extent that the Net Amount at Risk associated with the Minimum Death Benefit that results from this calculation exceeds our guidelines and limitations that may be in effect, we reserve the right to:

    (a)    distribute to you a portion of the Policy Value such that the Net Amount at Risk associated with the resulting Minimum Death Benefit does not exceed our guidelines and limitations in effect; or

    (b)    if we should decide to accept the additional death benefit, require evidence of insurability satisfactory to us.

## 7. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum including interest as stipulated by the state. If the state does not specify the interest rate, we will use the rate for insurance benefits left on deposit with us.

## 8. PREMIUMS

The Minimum Initial Premium is shown in Section 1. No insurance will take effect under this policy until our underwriters approve issuance of this policy and the conditions specified in the application form have been satisfied, including receipt of at least the Minimum Initial Premium at our Service Office.

Subsequent premiums may be paid at any time at our Service Office or to the agent who services your policy, and in any amount subject to the limits described below. We will give you a receipt signed by one of our officers.

If coverage under the policy takes effect in accordance with the provisions of the application, we will process any premium payment as of the end of the Business Day the payment is received at our Service Office, subject to the limitations of the life insurance qualification test elected by you and to our maximum limits then in effect, unless one of the following exceptions applies.

    (i)    We will process a payment received prior to the Policy Date as if received on the Policy Date.

    (ii)    We will process the portion of any premium payment for which we require evidence of the Life Insured's continued insurability on the first Business Day after we have received such evidence and found it satisfactory to us.

## 8. PREMIUMS (continued)

   (iii)   If our receipt of any premium payment (or portion thereof) would cause a problem for the policy to qualify as a "life insurance contract" under the federal income tax laws, we will not process such payment or portion. However, in the case of certain other tax situations, we will process the payment (or portion thereof) on the first Business Day after we have received satisfactory written instructions from you.

You may pay premiums until the Life Insured reaches Age 121, at which time Monthly Deductions cease and no further premiums may then be paid as described in Section 13.

If any premium payment would result in an increase in the Minimum Death Benefit, we reserve the right to either refund the premium or to require evidence of insurability satisfactory to us for any increase in the Minimum Death Benefit.

**Continuation of Insurance Upon Discontinuance of Premium Payments**

If you discontinue paying premiums, we will continue taking the Monthly Deductions from the Policy Value. Your insurance coverage will continue subject to the No-Lapse Guarantee, Grace Period, and Policy Termination provisions in Sections 9, 10 and 11.

## 9. NO-LAPSE GUARANTEE

Your policy includes a No-Lapse Guarantee. The guarantee periods applicable to the Base Face Amount and to any Supplemental Face Amount are shown in the Table of Values in Section 1. During your No-Lapse Guarantee Period, if the Net Cash Surrender Value falls to zero or below, your policy will not go into default provided it satisfies the cumulative premium test.

**Cumulative Premium Test**

The test will be performed on any Processing Date that your policy would otherwise be in default in the absence of the No-Lapse Guarantee. Your policy will satisfy the test if the sum of the premiums received, less any Policy Debt, and less any withdrawals, taken on or before the date of the test, is equal to or greater than the sum of the monthly No-Lapse Guarantee Premiums due from the Policy Date to the date of the test. The test will exclude any period during which the Life Insured was totally disabled if the Total Disability Waiver Of Monthly Deductions Rider Supplementary Benefit is included in the policy. The No-Lapse Guarantee Premium is shown as an annualized amount in the Table of Values in Section 1.

The No-Lapse Guarantee Premium may change if any of the following changes occur under your policy:

   (a)   you add, terminate or change a Supplementary Benefit rider;

   (b)   you change the Death Benefit Option under your policy;

   (c)   there is a change in the Base Face Amount or the Supplemental Face Amount; or

   (d)   there is a change in the Life Insured's Risk Classification, or if applicable, Additional Rating.

We will inform you of any change to the No-Lapse Guarantee Premium resulting from any such change. The revised premium will be effective from the date of the change. For the purpose of performing the Cumulative Premium Test, we will use the No-Lapse Guarantee Premium in effect as of the Policy Date up to the date of the change, including any revised premium in effect as of the date of a prior change.

At the end of the No-Lapse Guarantee Period, the Policy Value may be insufficient to keep this policy in force. In this event, an additional payment may be required at that time to keep this policy and coverage in force.

## 10. GRACE PERIOD

**Default**

Subject to the No-Lapse Guarantee feature of the policy, the policy and any Supplementary Benefit riders will go into default if, at the beginning of any Policy Month, the Net Cash Surrender Value is less than or equal to zero after we take the Monthly Deduction that is due for that month.

**Grace Period Duration**

We will allow 61 days from the date the policy goes into default, for you to pay the amount that is required to bring the policy out of default. At least 30 days prior to termination of coverage, we will send notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

PU096ATX

## 10. GRACE PERIOD (continued)

**Default Payment**

The amount required to bring the policy out of default, referred to as the Default Payment, is equal to (a) plus (b) plus (c) where:

    (a)    is the amount by which all unpaid monthly deductions exceeds the Net Cash Surrender Value at the date of default;

    (b)    is an amount equal to 3 times the Monthly Deduction due on the date of default;

    (c)    is the applicable Premium Charge.

When payment is received, any expense charges which are past due and unpaid will be immediately deducted from the Net Policy Value. If the Default Payment has not been paid by the end of the grace period, the policy will terminate. If the Life Insured dies while the policy is in default, then we will deduct from the proceeds all Monthly Deductions due and unpaid as of the date of the Life Insured's death. No Supplementary Benefit riders will be in effect after the policy terminates.

**No-Lapse Guarantee**

If the policy is in the No-Lapse Guarantee Period, and the Cumulative Premium Test has been met, then one of the following will apply.

- During the first 2 Policy Years, the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will remain in effect.

- For the remainder of the No-Lapse Guarantee Period, if any, (see Section 1 for the duration of the No-Lapse Guarantee Period), the Base Face Amount will remain in effect, but any Supplemental Face Amount and any Supplementary Benefit riders (unless otherwise stated therein) will be subject to termination. The amount required to maintain any Supplemental Face Amount and any applicable Supplementary Benefit riders is equal to the Default Payment specified above. If a payment at least equal to the Default Payment is not received by the end of the grace period, then any Supplemental Face Amount, and any Supplementary Benefit riders (unless otherwise stated therein), will cease to be in effect and will be terminated from the policy.

**Failure to Meet Cumulative Premium Test**

If the policy is in the No-Lapse Guarantee Period, and the Cumulative Premium Test has not been met, then the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will go into default, as described above. The Grace Period Duration and Default Payment provisions described above will apply. In lieu of the Default Payment, however, you may pay the shortfall needed to meet the Cumulative Premium Test, in which case one of the following will apply.

- During the first 2 Policy Years, the Base Face Amount, any Supplemental Face Amount, and any Supplementary Benefit riders will remain in effect.

- For the remainder of the No-Lapse Guarantee Period, if any, the Base Face Amount will remain in effect, but any Supplemental Face Amount and any Supplementary Benefit riders (unless otherwise stated therein) will terminate as of the end of the Grace Period.

The shortfall will be equal to the amount necessary to satisfy the Cumulative Premium Test as of the date of default, plus the No-Lapse Guarantee Premium for the next three Policy Months.

## 11. POLICY TERMINATION

This policy terminates on the earliest of the following events:

    (a)    the end of the grace period for which we have not received the amount necessary to bring the policy out of default;

    (b)    surrender of the policy for its Net Cash Surrender Value; or

    (c)    the death of the Life Insured.

## 12. REINSTATEMENT

If the policy terminates at the end of a grace period in which you did not make a required payment, the policy may be reinstated within 3 years from the date of default. The policy cannot be reinstated if it has been surrendered for its Net Cash Surrender Value.

The requirements for reinstatement are as follows:

    (1)    we must receive written request for reinstatement;

    (2)    we must receive evidence of insurability satisfactory to us for the Life Insured, and for any insureds covered under any Supplementary Benefit rider that you wish to reinstate;

    (3)    we must receive a premium equal to the amount that was required to bring the policy out of default immediately prior to termination, plus the amount needed to keep the policy in force for the next 3 Policy Months.

Requirements (2) and (3) must be satisfied within 60 days after the date we receive written request for reinstatement.

If we approve your request,

    (a)    the reinstatement date will be the date we receive the required payment at our Service Office;

    (b)    any Surrender Charge will be reinstated to the amount it was at the date of default;

    (c)    the remaining Surrender Charge Period, if any, will be the same as on the date of default;

    (d)    the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated;

    (e)    any remaining No-Lapse Guarantee Period will be reinstated with the policy.

## 13. COVERAGE AT AND AFTER AGE 121

Coverage under this policy at and after the Life Insured's Age 121 is subject to the stipulations stated below.

**Death Benefit**

Any Supplemental Face Amount will be terminated, thereby reducing the Death Benefit by such amount. Apart from this change, the Death Benefit will be determined in the same respect as specified in Section 6.

**Premiums and Monthly Deductions**

We will not accept any further premium payments. We will cease to take Monthly Deductions for charges listed in Section 1.

**Credited Interest**

We will continue to credit interest monthly to your Policy Value.

**Policy Debt and Default**

New Loans will not be allowed at and after the Life Insured's Age 121. Loan interest will continue to be charged if there is an outstanding loan when Monthly Deductions and premium payments cease at the Life Insured's Age 121. Loan repayments will be accepted at and after the Life Insured's Age 121. The policy will go into default at any time the Policy Debt exceeds the Policy Value, and Section 10, Grace Period, and Section 16, Loans, will apply.

**Withdrawals**

Withdrawals will not be allowed at and after the Life Insured's Age 121.

## 14. POLICY VALUE

**Net Premiums Added**

When we receive your premium payments at our Service Office, we deduct a Premium Charge which will not exceed the amount shown in Section 1 and add the balance remaining (the Net Premium) to the Policy Value. We will do this before we take any deductions due on that Business Day. However, we will add any Net Premiums received before the Policy Date to your Policy Value as of the Policy Date.

While a loan exists, we will treat the amounts you pay as premiums unless you request in writing that they be treated as loan repayments. If you instruct us to do so, we will first deduct from such payments the amount of accrued interest on loans and then deduct the amount specified as a loan repayment before applying any balance remaining as a premium payment.

PU116ATX

## 14. POLICY VALUE (continued)

**Monthly Deductions**

A deduction is due and will be taken from the Policy Value as of the Policy Date and as of each applicable Processing Date. Monthly Deductions are calculated from the Policy Date. If, at your request, we set the Policy Date to a date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the later of the date we receive the initial premium and the date our underwriters approve issuance of this policy.

Monthly Deductions are due until the Policy Anniversary on which the Life Insured reaches Age 121 at which time we will cease to take any further Monthly Deductions as described in Section 13.

The Monthly Deduction for any Policy Month that will be deducted from the Policy Value consists of charges (a) through (e) listed below, where:

    (a)    is the Administrative Charge;

    (b)    is the Face Amount Charge, if any;

    (c)    is the sum of the charges for riders which are part of the policy, if any, provided such charges are deducted from the Policy Value;

    (d)    is the sum of all charges for ratings, if applicable; and

    (e)    is the Cost of Insurance Charge, as described below.

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge, as of the Policy Date and subsequently for each increase in Total Face Amount, are based on the Life Insured's sex, if applicable, Age, Risk Classification and duration that the coverage has been in force.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk, including any Additional Ratings and any Supplementary Benefit riders which are part of the policy. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. The Maximum Monthly Rates at any age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured.

**Net Amount at Risk**

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

    (a)    is the Policy Value at the end of the immediately preceding Business Day less all charges due on the Policy Date or Processing Date;

    (b)    (i) is the sum of the Total Face Amount and the Death Benefit payable under any Supplementary Benefit riders, divided by the Death Benefit Discount Factor shown in Section 1 for Death Benefit Option 1; or (ii) is the sum of the Total Face Amount and the Death Benefit payable under any Supplementary Benefit riders, divided by the Death Benefit Discount Factor shown in Section 1 plus the Policy Value for Death Benefit Option 2; and

    (c)    is the amount defined in (a) multiplied by the applicable Minimum Death Benefit Factor for the Life Insured's Age as shown in Section 1.

**Other Deductions**

We will deduct a Surrender Charge, as detailed in Section 17, if during the Surrender Charge Period:

    (a)    you surrender this policy for its Net Cash Surrender Value;

    (b)    the Base Face Amount decreases;

    (c)    you do not pay an amount due at the end of the Grace Period as described in Section 10, and your policy terminates.

12

## 15. LOAN ACCOUNT AND GUARANTEED INTEREST ACCOUNT

The Policy Value at any time is equal to the sum of values you have in the Loan Account and the Guaranteed Interest Account.

**Loan Account Value**

The amount you have in the Loan Account at any time equals:

    (a)    amounts transferred to it for loans or borrowed loan interest; plus

    (b)    interest credited to it; less

    (c)    amounts transferred from it for loan repayment.

For details regarding the Loan Account, see Section 16.

**Guaranteed Interest Account Value**

The amount you have in the Guaranteed Interest Account at any time equals:

    (a)    Net Premiums allocated to it; plus

    (b)    amounts transferred to it; plus

    (c)    interest credited to it; less

    (d)    amounts deducted from it; less

    (e)    amounts transferred from it; less

    (f)    amounts withdrawn from it.

We will determine the rate or rates of interest to be credited to the Guaranteed Interest Account. Any additional interest will be credited no less frequently than annually. Additional interest is nonforfeitable after crediting. The rate or rates of interest will be determined prospectively and will be based on our expectations for the Guaranteed Interest Account's future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve, and capital requirements, but in no event will the minimum credited interest be less than the Guaranteed Interest Account Annual Rate shown in Section 1. The rate or rates of interest will be determined on a uniform basis for life insureds with the same timing and amount of premium, same amount of Policy Debt, and whose policies have been in force for the same length of time. For all transactions, interest is calculated from the date of the transaction.

## 16. LOANS

At any time while this policy is in force and sufficient loan value is available, you can get a loan by written request. Each loan must be for at least the Minimum Loan Amount shown in Section 1. We may require a loan agreement from you as the policy is the only security for the loan. We may defer loans as provided by law or as provided in Section 24. Loans may not be made if the policy is in the Grace Period as described in Section 10.

**Available Loan Value**

The available loan value on any date is the Net Cash Surrender Value, less estimated interest and the Monthly Deductions due to the next Policy Anniversary. In no event, however, will the available loan value be less than 90% of the Net Cash Surrender Value. Values will be determined, subject to Section 24, as of the end of the Business Day on which the loan application is received at our Service Office.

**Loan Account**

When you take out a loan, or when loan charges are borrowed, we will transfer amounts from the Guaranteed Interest Account into the Loan Account

Interest is credited to the Loan Account and interest is also charged on the Policy Debt, as described in the Loan Interest Charged and Loan Interest Credited provisions.

PU136ATX

## 16. LOANS (continued)

### Loan Interest Charged

The loan interest rate is variable.  It will be set each year at your Policy Anniversary and it will not change during the year.

The loan interest rate charged will not exceed the lesser of (a) and (b), where:

(a)   is 15% per annum; or

(b)   is the greater of:

    (i)   the Guaranteed Interest Account Rate shown in Section 1 plus 1% per annum; or

    (ii)   the Moody's Corporate Bond Yield Average-Monthly Average Corporates for the calendar month ending two months before the beginning of the month in which your Policy Anniversary falls.  For example, if your Policy Anniversary is in April; we would use the Average for January.

    If the Average is at least one-half of one percent smaller than the rate we have set for the previous Policy Year, we will reduce the rate to a rate no more than that Average.  If the Average is at least one-half of one percent greater than the rate we have set for the previous Policy Year, we will increase the rate to a rate no more than that Average.

    Moody's Corporate Bond Yield Average-Monthly Average Corporates referred to above is published in the United States by Moody's Investors Service, Inc.  In the event it is no longer published, we will use a similar average published by another United States bond rating agency.

Interest will accrue daily on loans.  Loan interest will be payable on each Annual Processing Date and on the date the loan is settled.  In the event that you do not pay the loan interest charged in any Policy Year, it will be borrowed against the policy and added to the Policy Debt in arrears at the Policy Anniversary.

We will increase the Loan Interest Rate at any time it is determined that the rate being charged would cause a loan to be taxable under any applicable ruling, regulation, or court decision.  In such case, we will increase the Loan Interest Rate to an amount that would result in the transaction being treated as a loan under federal tax law.

Loan interest will continue to be charged, as described in Section 13, when Monthly Deductions and premium payments cease at the Life Insured's Age 121.

### Loan Interest Credited

Loan interest will accrue daily to amounts in the Loan Account.  The effective loan interest rate credited is the difference between the effective loan interest rate charged and the Loan Interest Credited Differential.  The difference, in terms of dollars, is the cost of keeping a loan.  The differential will not exceed the Maximum Loan Interest Credited Differential shown in Section 1.

### Loan Repayment

You may repay the Policy Debt in whole or in part at any time prior to the death of the Life Insured and while the policy is in force.  When you make a loan payment or repay a loan, we will transfer an amount equal to the amount received, less the Loan Interest Credited Differential for such amount received, from the Loan Account to the Guaranteed Interest Account.

Subject to any rider, endorsement, or other provisions, while a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

This policy will terminate if the Policy Debt exceeds the Cash Surrender Value.  At least 30 days prior to the termination we will mail a notice to you at your last known address.  If you had filed a notice of assignment with us, we will also mail the notice to the last known address of the assignee on record.

## 17. SURRENDERS AND WITHDRAWALS

### Surrender of the Policy

You may surrender this policy upon written request for its Net Cash Surrender Value at any date prior to the death of the Life Insured.  We will determine the Net Cash Surrender Value as of the end of the Business Day on which we have received at our Service Office your written request for full surrender of the policy.  We will process the request and pay the Net Cash Surrender Value only if we have not received due proof that the Life Insured died prior to the surrender date.  After we receive your written request to surrender the policy, no insurance will be in force.  If you surrender the policy during the Surrender Charge Period, we will deduct a Surrender Charge from your Policy Value in calculating the Net Cash Surrender Value.  The Surrender Charge and Surrender Charge Period are shown in Section 1.

## 17. SURRENDERS AND WITHDRAWALS (continued)

The Cash Surrender Value within 30 days of any Policy Anniversary will not be less than the Cash Surrender Value on that Anniversary.

**Withdrawals**

Once per Policy Month after the first Policy Anniversary, you may request a withdrawal of part of the Net Cash Surrender Value if available. For each withdrawal we reserve the right to deduct a Withdrawal Fee as shown in Section 1. Withdrawals are subject to the following conditions:

    (a)    without our approval, each withdrawal must be for at least the Minimum Withdrawal Amount shown in Section 1;

    (b)    after the withdrawal, the remaining Net Cash Surrender must be at least equal to 3 times the Monthly Deductions at the time of the withdrawal;

    (c)    we will process the withdrawal, thereby reducing the Policy Value, as of the end of the Business Day on which we receive your written request;

    (d)    we will deduct a pro-rata Surrender Charge if the withdrawal occurs during the Surrender Charge Period, and the withdrawal results in a reduction in Base Face Amount;

    (e)    we will reduce the amount of the withdrawal if the amount is not sufficient to pay the withdrawal plus the Withdrawal Fee and any pro-rata Surrender Charge; and

    (f)    we will reduce the amount of the withdrawal if it would otherwise cause the Base Face Amount to fall below the Minimum Base Face Amount shown in Section 1.

If Death Benefit Option 1 is in effect at the time of the withdrawal, the Total Face Amount of the policy will be reduced:

    (a)    by the amount of the withdrawal, if at the time of the withdrawal the Death Benefit equals the Total Face Amount; otherwise

    (b)    by the amount, if any, by which the withdrawal (including any applicable pro-rata surrender charge and withdrawal fee) exceeds the difference between the Minimum Death Benefit and the Total Face Amount, divided by the applicable Minimum Death Benefit Factor for the Life Insured's Age as shown in the Table of Rates in Section 2.

Withdrawals will reduce the Supplemental Face Amount first, and then the Base Face Amount. We reserve the right to allow a reduction in Base Face Amount prior to fully reducing the Supplemental Face Amount. If the Death Benefit on any given day is equal to the Policy Value times the applicable Minimum Death Benefit Factor, withdrawals on such day will reduce the Death Benefit by the amount withdrawn times the applicable Minimum Death Benefit Factor until the Death Benefit is equal to the Total Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 13, subject to these provisions.

If Death Benefit Option 2 is in effect, an amount equal to any withdrawal and Withdrawal Fee will be deducted from the Policy Value. Withdrawals will not affect the Total Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 13.

## 18. OWNER AND BENEFICIARY

Until the Life Insured's death, without the consent of any revocable beneficiaries, you can receive any amount payable under the policy and exercise all rights and privileges granted by the policy.

**Change of Owner**

Until the Life Insured's death, the owner can change the ownership of the policy by written request. The change will take effect as of the date you signed the written request. It will not apply to any payments we made or any action we may have taken before we received your written request.

**Trustee Owner**

Should the owner be a trustee, payment to the trustee(s) of any amount to which the trustee(s) is (are) entitled under the policy, either by death or otherwise, will fully discharge us from all liability under the policy to the extent of the amount so paid.

**Joint Ownership**

Two or more owners will own the policy as joint tenants with right of survivorship, unless otherwise requested on the application or in any subsequent assignment of the policy. On death of any of the owners, the deceased owner's interest in the policy passes to the surviving owner(s).

PU156ATX

## 18. OWNER AND BENEFICIARY (continued)

**Successor Owner**

Upon the owner's death during the Life Insured's lifetime, a named successor owner will, if then living, have all the owner's rights and interest in the policy. Until the Life Insured's death, the owner, without the consent of any beneficiary or any successor owner, can cancel or change the designation of successor owner. This may be done from time to time by agreement in writing with us.

The following four provisions will apply unless there is a beneficiary appointment in force that provides otherwise.

**Beneficiary Classification**

You can appoint beneficiaries for the Insurance Benefit in three classes: primary, secondary, and final. Beneficiaries in the same class will share equally in the Insurance Benefit payable to them.

**Payment To Beneficiaries**

We will pay the Insurance Benefit:

    (a)    to any primary beneficiaries who are alive when the life insured dies; or

    (b)    if no primary beneficiary is then alive, to any secondary beneficiaries who are then alive; or

    (c)    if no primary or secondary beneficiary is then alive, to any final beneficiaries who are then alive.

**Change Of Beneficiary**

Until the Life Insured's death, you can change the beneficiary by written request unless you make an irrevocable designation. We are not responsible if the change does not achieve your purpose. The change will take effect as of the date you signed such request. It will not apply to any payments we made or any action we may have taken before we received your written request.

**Death Of Beneficiary**

If no beneficiary is alive when the Life Insured dies, the Insurance Benefit will be payable to you; or if you are the Life Insured, to your estate. Unless otherwise provided, if a beneficiary dies before the seventh day after the death of the Life Insured, we will pay the Insurance Benefit as if the beneficiary had died before the Life Insured.

## 19. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Life Insured and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing, nor will we be on notice until a duplicate of the original assignment has been filed at our Service Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 20. MISSTATEMENTS

If the age or sex of the Life Insured was misstated in the application, we will, if necessary, change the Base Face Amount, any Supplemental Face Amount, and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance Charge.

## 21. SUICIDE

If the Life Insured commits suicide, while sane or insane, within 2 years from the Issue Date, the policy will terminate on the date of such suicide and we will pay (in place of all other benefits, if any) an amount equal to the premiums paid less the amount of any Policy Debt on the date of death and less any withdrawals.

If the Life Insured commits suicide, while sane or insane, after 2 years from the Issue Date and within 2 years from

    (a)    the date we approve a schedule of increasing Supplemental Face Amount;

    (b)    the effective date of any unscheduled increase in Supplemental Face Amount; or

## 21. SUICIDE (continued)

    (c)    the date of an increase in Death Benefit resulting from any payment of premium we are authorized to refuse under Section 4;

the benefits payable under the policy will not include the amount of such Death Benefit increase but will include the amount of premium that pertains to the increase.

We reserve the right under this provision to obtain evidence of the manner and cause of death of the Life Insured.

## 22. INCONTESTABILITY

This policy shall be incontestable after it has been in force during the lifetime of the Life Insured for two Policy Years from the Issue Date, except for policy termination, or any provision for reinstatement or policy change requiring evidence of insurability. We can only contest any material misstatement contained in the application for this policy which is attached to this policy.

In the case of reinstatement or any policy change requiring evidence of insurability, the incontestable period shall be two years from the effective date of such reinstatement or policy change. However, for a policy change involving the approval of a schedule of increasing Supplemental Face Amount, the incontestable period shall be two years from the date we approve such schedule. The contest will be limited to only those material representations made in the reinstatement application or application for policy change.

Any premium payment which we accept subject to insurability, and any increase in the Death Benefit resulting from such payment, shall be considered a policy change for purposes of this Section.

## 23. THE CONTRACT

The written application for the policy is attached at issue. The entire contract between the applicant and us consists of the policy, such application, and any riders and endorsements. However, additional written requests or applications for policy changes or acceptance of excess payment may be submitted to us after issue and such additional requests may become part of the policy. All statements made in any application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of the Life Insured to defend a claim under the policy unless it is in a written application.

An exchange of this policy for a new policy on a different plan may be made by agreement between you and us in accordance with our published rules in effect at that time.

We reserve the right to make any changes necessary in order to keep this policy in compliance with any changes in federal or state tax laws. Other changes in this policy may be made by agreement between you and us. Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

## 24. RIGHT TO POSTPONE PAYMENT OF BENEFITS

We reserve the right to postpone the payment of Net Cash Surrender Value, withdrawals, and policy loans, for up to six months after we receive such written request, except when required to make a premium payment.

## 25. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

          PU176ATX

## 26. REPORTS TO OWNER

Within 30 days after each Policy Anniversary, we will send you a report at no charge showing:

- (a)    the Death Benefit;
- (b)    the Policy Value;
- (c)    any Policy Debt;
- (d)    any Loan Account balance and loan interest charged since the last report;
- (e)    the premiums paid for the year; and
- (f)    any further information required by law.

Upon request, we will provide you with a report of projected future values.  We will provide one report annually without charge.  For additional reports you request, we reserve the right to charge a reasonable fee, not to exceed $50.

## 27. HOW VALUES ARE COMPUTED

We base minimum Cash Surrender Values on the Commissioners 2001 Standard Ordinary Sex and Smoker Distinct ANB Ultimate Mortality Tables, with substandard ratings as applicable.  However, if this policy is issued on a unisex basis, we base minimum Net Cash Surrender Values on the Commissioners 2001 Standard Ordinary Male Mortality Table, with substandard ratings as applicable.  We also use these tables in determining Guaranteed Maximum Cost of Insurance Charges.  Cash Surrender Values and reserves will be at least as great as the minimum required by the law of the state shown in Section 1.

A detailed statement of the method of computing the values of this policy has been filed with the insurance department of the state shown in Section 1.

93 529 212     A71                                                    NS   N

APPLICATION SUPPLEMENT                           RETURN ONE COPY OF THIS FORM TO
                                               JOHN HANCOCK LIFE INSURANCE COMPANY
                                               HEAD OFFICE: 200 BLOOR STREET EAST
                                                     TORONTO, CANADA M4W 1E5

TWO COPIES OF THIS FORM MUST BE SIGNED BEFORE THIS POLICY IS DELIVERED

POLICY NUMBER:   93 529 212                      REGISTER:    20920

ON THE LIFE OF:   ████████████████

JOHN HANCOCK LIFE INSURANCE COMPANY   IS REQUESTED TO MAKE THE FOLLOWING
ADDITIONS, CORRECTIONS AND AMENDMENTS IN THE APPLICATION DATED JUN 29, 2007.  IT
IS AGREED THAT THEY ARE TO BE OF THE SAME EFFECT AS IF CONTAINED IN THE
APPLICATION.

THE FACE AMOUNT EXCLUDING RIDERS IS $7,000,000.00

THE ANSWER TO QUESTION 11C OF THE APPLICATION SHOULD READ: $20,000,000

THE POLICY IS ISSUED WITH SUPPLEMENTAL FACE AMOUNT - $3,000,000

DATED AT  Dallas., TX .........THIS  8ᵗʰ ...DAY OF  October .....YEAR. 2007 ...
               (city/state)

(X) ████████████████████        ████████████  trustee
    ────────────────────────    ────────────────────────
    SIGNATURE OF PROPOSED        SIGNATURE OF APPLICANT IF OTHER THAN
    LIFE INSURED (ANNUITANT)     PROPOSED LIFE INSURED (ANNUITANT)
    ████████████████             ████████████TRUSTEE

FORM 856