# EXHIBIT 3

*John Hancock*  Variable Life Insurance Company

P.O. Box 717
John Hancock Place
Boston, Massachusetts 02117
(800)-777-1377

**INSURED** ▮▮▮▮▮

**TOTAL SUM INSURED
AT ISSUE** **$2,000,000**

**POLICY NUMBER UL 1204737**

**DATE OF ISSUE** **MAY 12, 2006**

**DEATH BENEFIT Option A**

**PLAN Performance Universal Life Core**

# INDIVIDUAL UNIVERSAL LIFE INSURANCE

The John Hancock Variable Life Insurance Company ("the Company") agrees, subject to the conditions and provisions of this policy, to pay the Death Benefit to the Beneficiary upon the death of the Insured if such death occurs while the policy is in force, and to provide the other benefits, rights, and privileges of the policy. The Death Benefit (see Section 5) will be payable on receipt at the Servicing Office of the Company of due proof of the Insured's death.

The policy, which includes the application and any Riders which are a part of the policy on delivery, is issued in consideration of the application and payment of the Minimum Initial Premium as shown on page 3.

The Policy Specifications and the conditions and provisions on this and the following pages are part of the policy.

THE POLICY IS A LEGAL CONTRACT BETWEEN THE OWNER AND THE COMPANY. **READ YOUR POLICY CAREFULLY.**

Signed for the Company at Boston, Massachusetts:

*Michele H. Van Leer*
**PRESIDENT**

*Peter Scavongelli*
**SECRETARY**

Flexible Premium Adjustable Life Insurance
Death Benefit payable at death of Insured
Not eligible for dividends
Benefits, premiums and the Premium Class are shown in Section 1.

**10 Day Right of Examination – This policy may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. The Right of Examination is 30 days if replacement is involved. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium paid on it will then be refunded. For persons age 60 or older, the Right to Cancel is 30 days. After 30 days, cancellation may result in substantial penalty known as a Surrender Charge (see Sections 1 and 11).**

## Policy Provisions

### Section

1. Policy Specifications
2. Table of Rates
3. Definitions
4. Sum Insured
5. Death Benefit
6. Payments
7. Guaranteed Death Benefit Feature
8. Grace Period
9. Account Value
10. Loans
11. Surrenders and Withdrawals
12. Basis of Computations
13. Reports to Owner
14. Reinstatement
15. Owner and Beneficiary
16. Interest on Proceeds
17. Claims of Creditors
18. Assignment
19. Incontestability
20. Misstatements
21. Suicide Exclusion
22. The Contract
23. Settlement Provisions

2

## 1. POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| **Insured** | ███████████ | **Plan** | Performance Universal Life Core |
| **Issue Age** | 74 | **Policy Number** | 1204737 |
| **Sex** | Male | **Date of Issue** | May 12, 2006 |
| **Premium Class** | Preferred Nontobacco | | |
| **Owner, Beneficiary** | As designated in the application subject to Section 15 of the policy | | |
| **Death Benefit Option at Issue** | Option A | | |
| **Definition of Life Insurance Elected** | Cash Value Accumulation Test | | |
| **Age 100 Adjustment Date** | May 12, 2032 | | |

|  | **Sum Insured** |
|---|---|
| Basic Sum Insured at Issue | $2,000,000 |
| Total Sum Insured at Issue | $2,000,000 |
| **Minimum Total Sum Insured** | $100,000 |
| **Minimum Basic Sum Insured** | $50,000 |

#### Other Benefits and Specifications
As hereinafter described in this section 1
Accelerated Death Benefit Rider

#### PREMIUMS

| | |
|---|---|
| **Planned Premium** | $83,100.00 for years 1 thru 1 thereafter  according to the schedule indicated in the   application |
| **Target Premium** | $83,100.00 per year |
| **Minimum Initial Premium** | $17,540.00 |
| **9 Year Guaranteed Death Benefit Premium** | $5,846.67 per month |
| **Lifetime Guaranteed Death Benefit Premium** | $13,775.00 per month |
| **Billing Interval** | Annual |

**Notice:**  The actual premiums paid will affect the Account Value, the duration of insurance coverage, and the amount of Death Benefit as described in Section 5. **Even if the Planned Premiums shown above are paid as scheduled, they may not be sufficient to continue the policy in force until the death of the Insured.** Unless the Guaranteed Death Benefit feature is in effect, the policy will continue in force until the death of the Insured only if on each Grace Period Testing Date the policy's Surrender Value (as defined in Section 11) is at least equal to all due and unpaid Policy Charges.

## 1. POLICY SPECIFICATIONS, continued

### MAXIMUM POLICY CHARGES

**Deductions from Premium Payments**

> **Premium Charge**   8% of Premium Paid in all years.

**Monthly Deductions from Account Value**

| | |
|---|---|
| **Administrative Charge** | $31.00 for Policy Year 1, $11.00 for Policy Years 2 and after. |
| **Issue Charge** | Percentage of Target Premium at Issue as shown below (percentage shown is deducted monthly): |

| | | | |
|---|---|---|---|
| Policy Year 1 | 0.530% | Policy Year 6 | 0.530% |
| Policy Year 2 | 0.530% | Policy Year 7 | 0.530% |
| Policy Year 3 | 0.530% | Policy Year 8 | 0.530% |
| Policy Year 4 | 0.530% | Policy Year 9+ | 0.000% |
| Policy Year 5 | 0.530% | | |

| | |
|---|---|
| **Per Thousand BSI Charge** | $0.71560 per thousand of Basic Sum Insured for all Policy Years. |
| **Cost of Insurance Charge** | Determined in accordance with Section 9, and deducted for all Policy Years |
| **Rider Charges** | As hereinafter described in this Section 1 and in the applicable Table of Rates in Section 2 |

| | |
|---|---|
| **Surrender Charge** | Percentage of Premium paid in first two Policy Years up to Target Premium shown on page 3 and deducted upon Surrender in accordance with Section 11 as shown below: |

| | | | |
|---|---|---|---|
| Policy Year 1 | 50.00% | Policy Year 7 | 40.00% |
| Policy Year 2 | 50.00% | Policy Year 8 | 40.00% |
| Policy Year 3 | 50.00% | Policy Year 9 | 40.00% |
| Policy Year 4 | 50.00% | Policy Year 10 and after | 00.00% |
| Policy Year 5 | 45.00% | | |
| Policy Year 6 | 45.00% | | |

| | |
|---|---|
| **Withdrawal Charge** | $50.00 per withdrawal. (See Section 11) |

## 1. POLICY SPECIFICATIONS, continued

**Insured** ████████████

**Plan**  Performance Universal Life Core

**Policy Number**  1204737

**Rider Date of Issue**  May 12, 2006

### RIDER INFORMATION

| Type | Description | Rider Charge |
|---|---|---|
| Accelerated Death Benefit | Death Benefit is Accelerated in the event of Terminal Illness | |

## 2. TABLE OF RATES

### A. RATE TABLE

| Age[1] | Maximum Monthly Rates per $1,000 of Basic Sum Insured Net Amount at Risk[2] | Maximum Monthly Rates per $1,000 of Additional Sum Insured Net Amount at Risk[2] | Death Benefit Factor |
|---|---|---|---|
| 74 | 4.983 | 5.497 | 1.3781 |
| 75 | 5.513 | 6.083 | 1.3546 |
| 76 | 6.076 | 6.706 | 1.3325 |
| 77 | 6.665 | 7.359 | 1.3117 |
| 78 | 7.275 | 8.036 | 1.2922 |
| 79 | 7.923 | 8.756 | 1.2737 |
| 80 | 8.635 | 9.545 | 1.2560 |
| 81 | 9.430 | 10.430 | 1.2392 |
| 82 | 10.338 | 11.441 | 1.2232 |
| 83 | 11.373 | 12.594 | 1.2082 |
| 84 | 12.513 | 13.866 | 1.1942 |
| 85 | 13.737 | 15.234 | 1.1812 |
| 86 | 15.021 | 16.671 | 1.1692 |
| 87 | 16.356 | 18.169 | 1.1580 |
| 88 | 17.737 | 19.721 | 1.1475 |
| 89 | 19.171 | 21.335 | 1.1374 |
| 90 | 20.677 | 23.034 | 1.1277 |
| 91 | 22.287 | 24.854 | 1.1181 |
| 92 | 24.063 | 26.868 | 1.1082 |
| 93 | 26.119 | 29.206 | 1.0979 |
| 94 | 28.812 | 32.281 | 1.0869 |
| 95 | 32.817 | 36.879 | 1.0748 |
| 96 | 39.642 | 44.793 | 1.0616 |
| 97 | 53.066 | 60.684 | 1.0476 |
| 98 | 83.333 | 83.333 | 1.0334 |
| 99 | 83.333 | 83.333 | 1.0198 |
| 100+ | 0.000 | 0.000 | 1.0000 |

[1]   As defined in Section 3.

[2]   Maximum Monthly Rates and Minimum Values are based on the 1980 Commissioners Standard Ordinary Sex-distinct, Unismoke Mortality Table.

## 2. TABLE OF RATES, continued

### B. Charge for Increase in Basic Sum Insured (As defined in Section 4)[1]

Increases in Basic Sum Insured are not available after the anniversary nearest the Insured's 69th birthday.

| Policy Year | Age | Maximum Charge per $1,000 |
|:-----------:|:---:|:-------------------------:|
| 2 | 70+ | Not Applicable |

[1]   These rates are (i) per $1000 of the amount by which Basic Sum Insured is increased and (ii) based on the Insured's attained age, sex and Premium Class (as shown in Section 1).

## 3. DEFINITIONS

The term **"Account Value"** is as defined in Section 9.

The term **"Age"** means, on any policy anniversary, the age of the person in question at his or her birthday nearest that date (except as used in the term "Age 100 Adjustment Date").

The term **"Age 100 Adjustment Date"** means the policy anniversary nearest the insured's 100th birthday and is shown in Section 1.

The term **"Annual Processing Date"** means every 12th Processing Date starting with the Processing Date next after the Date of Issue.

The term **"business day"** means any date on which we are open for business.

The term **"Grace Period Testing Date"** means a Processing Date on which we make the determination described in Section 8. We will determine how often a Grace Period Testing Date will occur, but it will occur no less frequently than every 3rd Processing Date.

The term **"in force"** means that the insurance under the policy is being continued for the Death Benefit.

The term **"indebtedness"** means the unpaid balance of a policy loan, including any accrued and unpaid interest.

The term **"Minimum Initial Premium"** means the minimal initial modal premium needed to put the policy in force and is shown in Section 1.

The term **"Net Premium"** is as defined in Section 6.

The term **"Payment"** means, unless otherwise stated, payment at our Servicing Office.

The term **"Planned Premium"** means the premium that is selected in the application for the policy which is intended to be paid on a regular modal basis.

The term **"Policy Year"** means (a) or (b) below whichever is applicable:

    (a) The first Policy Year is the period beginning on the Date of Issue and ending on the business day immediately preceding the first Annual Processing Date;

    (b) Each subsequent Policy Year is the period beginning on an Annual Processing Date and ending on the business day immediately preceding the next Annual Processing Date.

The term **"Premium"** is as defined in Section 6.

The term **"Processing Date"** means the first day of a policy month. A policy month shall begin on the day in each calendar month that corresponds to the day of the calendar month on which the Date of Issue occurred. If the Date of Issue is the 29th, 30th, or 31st day of a calendar month, then for any calendar month that has fewer days, the first day of the policy month will be the last day of such calendar month. The Date of Issue is not a Processing Date.

The term **"Servicing Office"** means the Company's Office which administers this policy. As of the policy's Date of Issue, the address of the Servicing Office is as shown on the back cover of this policy. The address may be changed from time to time by us. We will send written notice of any such change to your last known address.

The term **"Target Premium"** is the amount shown in Section 1.

The terms **"we"** , **"us"** , and **"our"** refer only to the Company.

The term **"written notice"** means, unless otherwise stated, a written notice received at our Servicing Office or, if permitted by our administrative practices, an electronic mail message ("e-mail") received by us at the internet address specified by us for receipt of such messages.

The terms **"you"** and **"your"** refer only to the Owner of this policy.

U0503A

## 4. SUM INSURED

Sum Insured is equal to the Total Sum Insured at Issue shown in Section 1 until changed. Scheduled increases in any Additional Sum Insured are elected on the application. After the first Policy Year, unscheduled changes to Basic Sum Insured and Additional Sum Insured may also be made. An unscheduled change may be requested by written notice to us while the Insured is alive and the Policy is in force. We reserve the right to limit the number of such unscheduled changes to once per Policy Year. We also reserve the right to limit the maximum and minimum amounts of unscheduled changes. All requested changes will be subject to our approval.

### Increase in Total Sum Insured

The Total Sum Insured equals the sum of the Basic Sum Insured and any Additional Sum Insured, subject to the provisions on withdrawals in Section 11. As a condition of our approval of any unscheduled increase in Total Sum Insured, we may require evidence of insurability satisfactory to us. A minimum premium payment may also be required. When a requested change becomes effective, and if required by our then current rules, a change in future Planned Premiums will automatically be effected to comply with those rules. Any change will be effective on the next Processing Date after our approval. A charge will apply for any increase in Basic Sum Insured. The charge will be based on the Insured's Age on the effective date of such increase and will be calculated in accordance with the applicable Table of Rates shown in Section 2. Any unscheduled increase in Additional Sum Insured will terminate the Lifetime Guaranteed Death Benefit feature, as described in Section 7. The amounts shown in Section 1 for the Guaranteed Death Benefit Premiums may change in the event of any increase in Basic Sum Insured.

### Reduction of Total Sum Insured

You may request a reduction in Total Sum Insured while this policy is in force. Unless you request otherwise in writing, and our administrative rules then in effect allow, any reduction in the Total Sum Insured will be implemented by first reducing any Additional Sum Insured. Upon written request, however, we will first reduce Basic Sum Insured, provided such Basic Sum Insured reduction is permitted by our administrative rules then in effect. If there is a reduction in Basic Sum Insured, a charge will be deducted from the Account Value. This charge will be equal to a proportionate part of the Surrender Charge that would have applied if the policy had been surrendered on the date the reduction in Basic Sum Insured takes effect. The proportion will be equal to the amount of the reduction in Basic Sum Insured divided by the amount of Basic Sum Insured in effect before the reduction. Any Guaranteed Death Benefit in effect on the date of the requested reduction may be adjusted to prospectively reflect the new Basic Sum Insured. Without our prior approval, the Basic Sum Insured cannot be reduced below the minimum as shown in Section 1. Any reduction in Additional Sum Insured or Basic Sum Insured will be effective on the next Processing Date after our approval.

## 5. DEATH BENEFIT

The Death Benefit is payable if (i) the Insured dies prior to the Surrender Date while the policy is in force and (ii) we receive due proof of death prior to the payment of the Surrender Value. The Death Benefit will equal the death benefit of the policy minus any indebtedness on the date of death. We will also deduct any unpaid charges under Section 9. In addition, if the Insured dies during a grace period as described in Section 8, we will also deduct the amount of any unpaid default payment described in that section.

The death benefit of the policy depends in part on which of the following Options is in effect. The Option as of the Date of Issue is selected in the application for the policy.

The determination of the death benefit under each of these Options will be affected by withdrawals as described in Section 11.

**Option A: Level Death Benefit:** The death benefit of the policy is the greater of: (i) the Total Sum Insured; and (ii) the Account Value on the date of death times the applicable Death Benefit Factor shown in Section 2.

**Option B: Variable Death Benefit:** The death benefit of the policy is the greater of: (i) the Total Sum Insured plus the Account Value on the Date of Death; and (ii) the Account Value on the date of death times the applicable Death Benefit Factor shown in Section 2.

**Death Benefit At and After the Age 100 Adjustment Date**

If this policy is in force on the Age 100 Adjustment Date, Death Benefit Options A and B described above will cease to apply. We will automatically set the Additional Sum Insured equal to zero, and discontinue deduction of the Administrative charges, Per Thousand BSI Charges, Cost of the Insurance Charge, and the sum of the the charges for ratings and riders which are part of the policy, if applicable from the Account Value. As a result of such changes, the death benefit of the policy will thereafter be equal to the greater of (a) the Basic Sum Insured plus the lesser of the following (i) the Account Value immediately before the Age 100 Adjustment Date and (ii) the Additional Sum Insured, if any, in effect immediately before the Age 100 Adjustment Date or (b) the Account Value on the date of death of the insured. As stated previously, the Death Benefit will equal the death benefit of the policy minus any indebtedness on the date of death of the Insured. In no event will premium payments be accepted after the Age 100 Adjustment Date.

**Change of Death Benefit Option**

You may change from Option B to Option A on any policy anniversary, subject to our administrative rules then in effect. We may require evidence of insurability satisfactory to us for a change in Options. At the time a new Option takes effect, the Death Benefit under the new Option will be the same as it was under the old Option. A change from Option B to Option A will therefore increase the Additional Sum Insured by the Account Value at the time the new Option takes effect. If you change a death benefit option, the various Guaranteed Death Benefit Premiums described in Section 7 may change. Further, in accordance with Section 7, a change in Death Benefit Options will cause the Lifetime Guaranteed Death Benefit feature to terminate.

## 6. PAYMENTS

Payments under the policy shall be made only to us at our Servicing Office. If payments are not being made on an electronic basis, a premium reminder notice for Planned Premiums, as shown in the application for the policy, will be sent to you at the beginning of each payment interval.

When we receive a payment, we first deduct any amount specified as payment of accrued interest on loans then due under Section 10 and any amount specified as loan repayment. The remainder will constitute Premium. We then deduct the applicable Premium Charge. The remainder will constitute Net Premium.

If coverage under the policy takes effect in accordance with the provisions of the application, we will process any premium payment as of the end of the business day on which the payment is received at our Servicing Office, unless one of the following exceptions applies:

(i)   We will process a payment received prior to the Date of Issue as if received on the Date of Issue;

(ii)  We will process the portion of any premium payment for which we require evidence of the Insured's continued insurability on the first business day after we have received such evidence and found it satisfactory to us;

(iii) If a payment equal to the Minimum Initial Premium is not received prior to the Date of Issue, a portion of each payment subsequently received will be processed as if received on the Date of Issue. Each such portion will be equal to the (i) Minimum Initial Premium minus (ii) all payments previously received. The remainder, if any, of each such payment will be processed as of the date of receipt;

(iv)  If our receipt of any premium payment (or portion thereof) would cause a problem for the policy to qualify as a "life insurance contract" under the Federal income tax laws, we will not process such payment or portion. However, in the case of certain other tax problems, we will process the payment or portion on the first business day after we have received written instructions satisfactory to us from you to process such payment or portion notwithstanding the existence of the tax problem.

Premiums are payable in advance and a premium receipt will be furnished upon request.

Subject to our maximum limits, you may pay Premiums in excess of the Planned Premium while the policy is in force. We may require evidence of insurability for any such excess premium.

7

U0703A

**The following applies if the Tax Test elected for Federal income tax purposes is "Guideline Premium Test", as shown in Section 1.**

The provisions of this policy are to be interpreted to ensure or maintain qualification as a life insurance contract for federal tax purposes, notwithstanding any other provisions to the contrary. If at any time the premiums paid under the Policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount (plus or minus any interest) shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount (plus or minus any interest) is not refunded by then, the Sum Insured under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating.

**The following applies if the Tax Test elected for Federal income tax purposes is "Cash Value Accumulation Test", as shown in Section 1.**

We reserve the right to modify the Death Benefit Factors shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for Federal tax purposes, notwithstanding any other provisions of this policy to the contrary.

## 7. GUARANTEED DEATH BENEFIT FEATURE

There are two levels of the Guaranteed Death Benefit feature. They are the 9 Year Guaranteed Death Benefit and the Lifetime Guaranteed Death Benefit. The 9 Year Guaranteed Death Benefit is a guarantee that the Basic Sum Insured, any Additional Sum Insured and any rider benefits of your policy will not terminate, regardless of Account Value, if the "9 Year Cumulative Premium Balance" equals or exceeds the applicable "9 Year Guaranteed Death Benefit Premium Target" on the applicable Grace Period Testing Date. The Lifetime Guaranteed Death Benefit is a guarantee that the Basic Sum Insured portion of your policy will not terminate, regardless of Account Value, if the "Lifetime Cumulative Premium Balance" equals or exceeds the applicable "Lifetime Guaranteed Death Benefit Premium Target" on the applicable Grace Period Testing Date. If there are monthly charges that remain unpaid because of this feature, we will deduct such charges when there is sufficient Account Value to pay them.

Your policy contains a Guaranteed Death Benefit feature only if the Premiums shown in Section 1 include amounts for a "9 Year Guaranteed Death Benefit Premium" or a "Lifetime Guaranteed Death Benefit Premium" and the Guaranteed Death Benefit feature has not terminated in accordance with this Section 7. These amounts are used to determine the "9 Year Guaranteed Death Benefit Premium Target" and "Lifetime Guaranteed Death Benefit Premium Target" as explained below.

**The Funding Requirements**

At the beginning of each Grace Period Testing Date, we will determine whether the applicable Cumulative Premium Balance (as defined below) equals or exceeds the applicable Guaranteed Death Benefit Premium Target (as defined below). If it does, the Guaranteed Death Benefit feature will be in effect on that Grace Period Testing Date until the next Grace Period Testing Date.

The "9 Year Cumulative Premium Balance" is equal to the sum of all Premiums paid prior to a Grace Period Testing Date, less the sum of all withdrawals made prior to that date and less the policy indebtedness as of that date.

The "9 Year Guaranteed Death Benefit Premium Target" is equal to the applicable Guaranteed Death Benefit Premium (as indicated below) times the number of elapsed policy months from the Date of Issue to the Grace Period Testing Date in question.

The "Lifetime Cumulative Premium Balance" is equal to the sum of all Premiums paid prior to a Grace Period Testing Date, less the sum of all withdrawals, both accumulated at an effective annual interest rate of 4%, less the policy indebtedness as of that date. Such interest accumulation will be measured from the date the premium was credited or the Withdrawal was effective up to the Grace Period Testing Date.

- The "Lifetime Guaranteed Death Benefit Premium Target" is equal to the sum of the Lifetime Guaranteed Death Benefit Premiums accumulated at an effective annual interest rate of 4% from the Date of Issue to the Grace Period Testing Date in question.

On each Grace Period Testing Date that occurs on or prior to the ninth policy anniversary, the 9 Year Guaranteed Death Benefit Premium will be used to determine the 9 Year Guaranteed Death Benefit Premium Target.

On each Grace Period Testing Date that occurs thereafter and prior to the policy anniversary nearest the Insured's 100th birthday, the Lifetime Guaranteed Death Benefit Premium will be used to determine the Lifetime Guaranteed Death Benefit Premium Target.

The Lifetime Guaranteed Death Benefit feature will terminate on the earliest of (i) the policy anniversary nearest the Insured's 100th birthday, (ii) the effective date of any unscheduled increase in the Additional Sum Insured, (iii) a change in the Death Benefit Option, as described in Section 5, and (iv) the date, after the Date of Issue, on which an additional rider is added to the policy.

The amounts shown in Section 1 for the Guaranteed Death Benefit Premiums may change in the event of any decrease in Total Sum Insured, any increase in Basic Sum Insured or any change in Death Benefit Options.

## 8. GRACE PERIOD

On each Grace Period Testing Date, we will determine if the total of all unpaid Section 9 charges as of such date are greater than the Surrender Value as of such date. If that is the case one of the following will apply, depending upon when the Grace Period Testing Date occurs:

- During the first nine Policy Years – If the 9 Year Guaranteed Death Benefit feature is in effect, then the Basic Sum Insured, any Additional Sum Insured and any rider benefits will remain in effect.

- During Policy Year 10 and thereafter up to the Age 100 Adjustment Date – If the Lifetime Guaranteed Death Benefit feature is in effect, then the Basic Sum Insured will remain in effect, but any Additional Sum Insured and any rider benefits (unless otherwise stated therein) will be in default as of that Grace Period Testing Date (referred to below as an "ASI Default"); and

- During the Policy Year beginning on the Age 100 Adjustment Date and thereafter – If the Lifetime Guaranteed Death Benefit Feature is in effect on the Age 100 Adjustment Date, the death benefit of the policy, as described in Section 5, will be guaranteed not to terminate for as long as the Insured is alive.

- During any Policy Year – If the applicable Guaranteed Death Benefit feature is not in effect, then the Basic Sum Insured, any Additional Sum Insured and any rider benefits will be in default as of that Grace Period Testing Date (referred to below as a "Policy Default").

The minimum amount you must pay to cure either type of default is "the Default Payment". The Default Payment will be equal to a payment which, after deduction of the Premium Charge, equals: (i) the amount, if any, by which the Surrender Value is less than zero on the date of default plus (ii) any and all Section 9 charges unpaid prior to the date of default plus (iii) three times the total of all Section 9 charges for the date of default.

An amount at least equal to the Default Payment must be received within a grace period of 61 days after the date of default. We will send notice to your last known address and to the last known address of any assignee of record with us at least 31 days before the end of this grace period specifying whether there is an ASI Default or a Policy Default and the Default Payment which you must make to cure the default.

If a payment at least equal to the Default Payment is received before the end of the grace period, there will no longer be a default. Any payment received will be processed as of the date of receipt at our Servicing Office. When payment is received, any Section 9 charges which are past due and unpaid will be deducted from the Account Value.

If there is an ASI Default and a payment at least equal to the Default Payment is not received by the end of the grace period, then any Additional Sum Insured, and any riders (unless otherwise stated therein), will cease to be in effect and will be removed from the policy. If there is a Policy Default and a payment at least equal to the Default Payment is not received by the end of the grace period, then the policy will lapse and will no longer be in force. Upon a lapse of the policy the remaining Surrender Value, if any, will be paid to the Owner.

If the Insured dies during a Policy Default or during an ASI Default then we will deduct from the proceeds all Section 9 charges due and unpaid on the date of the Insured's death.

The policy may also terminate due to Excess Indebtedness as described in Section 10. No Rider provisions will be in effect after the policy ceases to be in force.

## 9. ACCOUNT VALUE

On the later of the Date of Issue or the receipt of the first payment at our Servicing Office, the Account Value will be equal to the Net Premium credited less an amount not to exceed one month worth of Monthly Deductions from Account Value as shown in Section 1 and hereinafter described in this Section 9. The Account Value is then determined daily by accumulating with interest the Account Value for the prior day increased by Net Premiums credited and decreased by Withdrawals and, on a Processing Date, the Monthly Deductions from Account Value shown in Section 1 and hereinafter described in this Section 9.

### Interest

We will determine the rate or rates of interest to be credited to the Account Value. The rate or rates of interest will be based on our expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve and capital requirements, but in no event will the minimum credited interest rate be less than an effective annual guaranteed credited interest rate of 3%. The rate or rates of interest will be determined on a uniform basis for Insureds with the same timing and amount of premium, same amount of indebtedness and whose policies have been in force for the same length of time. The rate of interest credited to amounts of Account Value up to and including indebtedness will be no less than the current Loan Interest Rate for this policy less .75%.

### Monthly Deductions from Account Value

We will deduct from the Account Value on each applicable Processing Date, an amount not to exceed the Monthly Deductions from Account Value shown in Section 1 and as described below.

On the Date of Issue and on every Processing Date, we will deduct, in order, each of the charges (a) through (e) from the Account Value, where:

   (a) is the Issue Charge, if any;
   (b) is the Per Thousand BSI Charge;
   (c) is the Administrative Charge;
   (d) is the sum of the charges for Riders which are part of the policy, if any, provided such charges are deducted from the Account Value;
   (e) is the sum of all charges for ratings, if applicable; and
   (f) is the Cost of Insurance Charge.

**Cost of Insurance Charge**

The Cost of Insurance Charge on the Date of Issue or on any Processing Date is an amount equal to the applicable Applied Monthly Rate on that date, multiplied by the Net Amount at Risk on that date.

Each Cost of Insurance Charge is deducted in advance of the insurance coverage to which it applies.

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

    (a) is the Account Value at the end of the immediately preceding business day less all charges due on the Date of Issue or Processing Date;

    (b) (i) is the Total Sum Insured divided by 1.0032737 for death benefit Option A; or (ii) is the Total Sum Insured divided by 1.0032737, plus the Account Value for death benefit Option B; and

    (c) is the amount defined in (a) multiplied by the applicable Death Benefit Factor shown in Section 2.

The Applied Monthly Rates are the actual rates used to calculate the Cost of Insurance Charge. We will determine the Applied Monthly Rates to be used for this policy. The Applied Monthly Rates will be based on our expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve and capital requirements and will never be greater than the Maximum Monthly Rates shown in Section 2 divided by 1,000. They will be reviewed at least once every 5 Policy Years. Any change in Applied Monthly Rates will be made on a uniform basis for insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force the same length of time.

## 10. LOANS

You may borrow money from us on receipt at our Servicing Office of a completed form satisfactory to us assigning the policy as the only security for the loan.

Loans may be made after the first Policy Year if a Loan Value is available. You will be notified in writing if the Company chooses to make loans available during the first Policy Year. Each loan must be for at least $300. We may defer loans as provided by law. We will not defer loans for more than 6 months. We will not defer loans that are applied to pay premiums on policies with us. Loans, except those used to pay premiums on policies with us, may not be made if the policy is in a grace period as described in Section 8.

The Loan Value while the policy is in force will be an amount equal to (i) the Surrender Value, less (ii) 12 times the monthly charges then being deducted from the Account Value, less (iii) an amount determined as follows:

- Deduct (ii) above from (i) above.

- Multiply the result by the difference between the effective annual rate then being charged on loans and the effective annual rate then being credited on Loan Assets.

Values will be determined at the end of the business day in which the loan application is received at our Servicing Office.

Loan interest, at a rate described in the "Variable Loan Interest Rate" provision below, will accrue and be added to the loan daily and will bear interest from the date of accrual. Loan interest will be payable on each Annual Processing Date and on the date the loan is settled. Interest may be paid in advance at the equivalent effective rate. A loan may be repaid in full or in part at any time before the Insured's death, and while the policy is in force.

**Variable Loan Interest Rate**

We will annually determine in the month preceding the policy anniversary the Loan Interest Rate for this policy. This rate will apply to all indebtedness outstanding during the Policy Year next following the date of determination. The rate will not exceed the higher of (a) the "Published Monthly Average" for the calendar month, which is two months before the month in which the date of determination occurs; and (b) 5%.

The "Published Monthly Average" means Moody's Corporate Bond Yield Average–Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor thereto. If the "Published Monthly Average" is no longer published, we reserve the right to select a substitute that we deem appropriate, subject to applicable law, regulation, or other state requirement.

11

IU1103A

When a new rate is determined: (a) we may increase the previous rate if the increase would be at least 1/2%; and (b) we must reduce the previous rate if the decrease would be at least 1/2%. We will: (a) notify you of the initial Loan Interest Rate at the time a loan is made; and (b) notify you of any increase in the Loan Interest Rate if there is outstanding indebtedness on the policy.

If Excess Indebtedness occurs on any date, one of the following will apply:

- **During the first nine Policy Years** – If the 9 Year Guaranteed Death Benefit feature is in effect, then the Basic Sum Insured, any Additional Sum Insured and any rider benefits will remain in effect.

- **During Policy Year 10 and thereafter** – If the Lifetime Guaranteed Death Benefit feature, whichever is applicable, is in effect, then the Basic Sum Insured will remain in effect, but any Additional Sum Insured and any rider benefits (unless otherwise stated therein) will be in default as of the date in question; and

- **During any Policy Year** – if the applicable Guaranteed Death Benefit feature is not in effect, then all policy benefits (i.e., the Basic Sum Insured, any Additional Sum Insured and any rider benefits) will be in default as of the date in question.

The benefits that are in default will terminate on the 31st day after the Notice Date occurs if such excess indebtedness has not been repaid by that date. "Excess Indebtedness" is the amount, if any, by which indebtedness exceeds an amount equal to the Account Value less the Surrender Charge, if any. "Notice Date" is the date on which notice of Excess Indebtedness is mailed to you and any assignee of record with us at the address last known to us.

Loan Assets are equal to the total of all outstanding loans plus interest credited on each loan amount measured from the date of each loan. When a loan is made, the amount of the loan will be transferred to Loan Assets. At no time will the Loan Assets exceed the Loan Value available under this policy as described in this Section 10. The interest credited to Loan Assets will be added daily and will bear interest from the date of each loan.

The effective annual rate of interest credited to Loan Assets will be no less than the current Loan Interest Rate for this policy less .75% for the first 10 policy years, .50% for Policy Years 11 through 20 and .25% thereafter. The amount transferred to Loan Assets will be removed from the Account Value. Any amount specified as loan repayment will be allocated to the Account Value.

## 11. SURRENDERS AND WITHDRAWALS

We will determine the Surrender Value of the policy if we receive written notice requesting full surrender of this policy while this policy is in force. We will process the request and pay the Surrender Value only if we have not received due proof that the Insured died prior to the Surrender Date. The Surrender Value will be calculated as of the Surrender Date. The Surrender Date is the end of the day in which we have received at our Servicing Office written notice requesting full surrender of this policy.

While the policy is in force, the Surrender Value will be an amount equal to the Account Value less any indebtedness less the Surrender Charge as shown in Section 1.

You may request a withdrawal of part of the Surrender Value in accordance with our rules then in effect. The amount of the withdrawal will be removed from the Account Value. For each withdrawal, we reserve the right to make a charge to the Account Value of an amount not to exceed $50. In addition, the charge for a reduction in coverage described in Section 4 will be deducted from the Account Value if the withdrawal causes a reduction in Basic Sum Insured. Generally, each withdrawal must be at least $1,000. No withdrawal can be made unless the resulting Total Sum Insured is at least equal to the Minimum Total Sum Insured shown in Section 1 and the resulting Surrender Value is equal to or greater than three times the Section 9 charges at the time of withdrawal.

All amounts withdrawn will be subtracted from the Cumulative Premium Balance as described in Section 7 and will also be subtracted from your Account Value. Further, your death benefit will be affected as follows:

- With respect to determining the death benefit under Option A, the Total Sum Insured will be reduced by the total of all withdrawals. Unless you request otherwise in writing, and our administrative rules then in effect allow, withdrawals will reduce, dollar for dollar, any Additional Sum Insured until exhausted and then Basic Sum Insured. Upon written request, however, we will reduce Basic Sum Insured, provided such Basic Sum Insured reduction is permitted by our administrative rules then in effect. If the Death Benefit Factor is in effect, the withdrawals will reduce the Death Benefit of the policy by the amount withdrawn times the Death Benefit factor until the Death Benefit Factor is not in effect. Your Death Benefit will continue to be determined in accordance with Section 5, subject to these provisions.

- With respect to determining the death benefit of the policy under Death Benefit Option B (Variable Death Benefit), an amount equal to any withdrawal and its related charge will be deducted from the Account Value. Withdrawals will not affect the Total Sum Insured. Your Death Benefit will continue to be determined in accordance with Section 5.

## 12. BASIS OF COMPUTATIONS

Minimum surrender values, reserves and net single premiums referred to in the policy, if any, are computed on the basis of the Commissioners 1980 Standard Ordinary Sex–distinct Smoker–distinct Mortality Tables with percentage ratings, if applicable, and based on the underwriting class of the insured on the Date of Issue. The computations are made using interest at the rate of 3% a year and using continuous functions.

The Account Value while the policy is in full force is computed as described in Section 9. A detailed statement of the method of computation of values has been filed with insurance supervisory officials of the jurisdiction in which this policy has been delivered. The values are not less than the minimum values under the law of that jurisdiction. Any values, reserves and premiums applicable to any provision for an additional benefit shall be specified in the provision and have no effect in determining the values available under the provisions of this Section 12.

## 13. REPORTS TO OWNER

While the policy is in full force, we will send you a statement at least annually and for no charge, setting forth the following information:

    (a) The Death Benefit, in accordance with the Death Benefit Option elected, and the Account Value, both as of the date of the report;

    (b) Payments received and charges made since the last report;

    (c) Withdrawals since the last report; and

    (d) Loan information.

On request, we will furnish a report of projected future values. We may charge a reasonable fee, not to exceed $50, for such report.

## 14. REINSTATEMENT

If there is a Policy Default or ASI Default under Section 8, the policy or the Additional Sum Insured (as the case may be) may be reinstated within 3 years after the beginning of the grace period.

The date of reinstatement of the policy or the Additional Sum Insured is the date on which we determine that all 3 requirements below have been satisfied:

    (1) Receipt of a written application for reinstatement.

    (2) Receipt of evidence of insurability satisfactory to us.

    (3) Receipt of a payment which, after deduction of the applicable Premium Charges, is at least equal to the sum of (i) all unpaid charges described in Section 9, plus interest on each such charge from the date due up to and including the date of reinstatement at an annual effective rate of 6%, compounded annually, plus (ii) the total of all Section 9 charges for the three Processing Dates next following the date of reinstatement, where the Section 9 charges for the three Processing Dates next following the date of reinstatement are assumed to be equal to such charges on the date of default.

Requirements (2) and (3) must be satisfied within 60 days after the date we receive the application for reinstatement.

U1303ACA

On the date of reinstatement of the policy (i) the death benefit of the policy will be the same as if no lapse had occurred and (ii) the policy will have indebtedness equal to any indebtedness at the end of the day immediately preceding the date of reinstatement.

The Account Value on the date of reinstatement of the policy will be the payment received in connection with the reinstatement less the sum of all Section 8 charges that would have been made from the date of lapse to the date of reinstatement if the policy had not lapsed and less interest on each such charge at an effective annual rate of 6%, compounded annually, from the date such charge would have been due up to and including the date of reinstatement.

## 15. OWNER AND BENEFICIARY

The Owner and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

If there is no surviving Beneficiary upon the death of the Insured, you will be the Beneficiary, but if you were the Insured, your estate will be Beneficiary.

While the Insured is alive, you may change the Owner and Beneficiary by written notice. You may also revoke any change of Owner prior to its effective date by written notice. No change or revocation will take effect unless we acknowledge receipt of the notice. If such acknowledgment occurs, then (i) a change of Beneficiary will take effect on the date the notice is signed, and (ii) a change or a revocation of Owner will take effect as of the date specified in the notice, or if no such date is specified, on the date the notice is signed. A change or revocation will take effect whether or not you or the Insured is alive on the date we acknowledge receipt. A change or revocation will be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we acknowledge receipt.

## 16. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment. The rate will be the same as declared for Option 1 in Section 23, Settlement Provisions, or such greater rate as is required by law.

## 17. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## 18. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Insured and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing, nor will we be on notice until a duplicate of the original assignment has been received at our Servicing Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 19. INCONTESTABILITY

This policy, except any provision for reinstatement or policy change requiring evidence of insurability, shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue, except for fraud, policy lapse under Section 8 or policy termination under Section 10.

A reinstatement and any policy change requiring evidence of insurability shall be incontestable after it has been in force during the lifetime of the Insured for two years from the effective date of such reinstatement or policy change, except for fraud, policy lapse under Section 8 or policy termination under Section 10.

Any premium payment which we accept under Section 6 subject to insurability shall be considered a policy change for the purposes of this section. Any increase in the Death Benefit resulting from such payment shall be governed by the immediately preceding paragraph.

## 20. MISSTATEMENTS

If the age or sex of the Insured has been misstated, we will adjust the Basic Sum Insured, any Additional Sum Insured, and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance charge deducted under Section 9.

## 21. SUICIDE EXCLUSION

If the Insured commits suicide, while sane or insane, within 2 years from the Date of Issue, the policy will terminate on the date of such suicide and we will pay (in place of all other benefits, if any) an amount equal to the Premiums paid less the amount of any indebtedness on the date of death and less any withdrawals under Section 11. If the Insured commits suicide, while sane or insane, after 2 years from the Date of Issue and within 2 years from the effective date of any increase in the Death Benefit resulting from any payment of Premium we are authorized to refuse under Section 6, the benefits payable under the policy will not include the amount of such Death Benefit increase but will include the amount of such Premium.

## 22. THE CONTRACT

The written application for the policy is attached at issue. The entire contract between the applicant and us consists of the policy, such application, and any riders and endorsements. However, additional written requests or applications for policy changes or acceptance of excess payment under Section 6 may be submitted to us after issue and such additional requests may become part of the policy. All statements made in any application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of the Insured to defend a claim under the policy unless it is in a written application. Policy Years, policy months, and policy anniversaries are measured from the Date of Issue.

Any reference in this policy to a date means a calendar day ending at midnight local time at our Servicing Office.

An exchange of this policy for a new policy on a different plan may be made by agreement between you and us in accordance with our published rules in effect at that time.

We reserve the right to make any changes necessary in order to keep this policy in compliance with any changes in federal or state tax laws. Other changes in this policy may be made by agreement between you and us. Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

U1503A

## 23. SETTLEMENT PROVISIONS

**Optional Methods of Settlement**

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit or as the Surrender Value, if any, may be left with us, under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the choice of any one of the options below, or any additional options we, in our sole discretion, may make available after issue. We shall at least annually declare the rate of interest or amount of payment for each option. Such declaration shall be effective until the date specified in the next declaration.

**Option 1**—Interest Income at the declared rate but not less than 2.0% a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A**—Income of a Specified Amount, with payments each year totalling at least 1/12th of the proceeds, until the proceeds plus interest is paid in full. We will credit interest on unpaid balances at the declared rate but not less than 2.0% a year.

**Option 2B**— Income for a Fixed Period with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3**— Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the Payee dies within that period, we will pay the present value of the remaining payments. In determining present value, we will use the same interest rate used to determine the payments for this option.

**Option 4**— Life Income without Refund at the death of the Payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5**— Life Income with Cash Refund at the death of the Payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may choose an option by written notice to us: (a) while the Insured is alive; and (b) before the proceeds become payable. If you have made no effective choice, the Payee may make one by written notice within: (a) 6 months after the death of the Insured; or (b) 2 months after the date on which the proceeds, if any, are payable in any case except death.

Your annuity payment for Options 1, 2A, and 2B will be the greater of (a) the rate guaranteed in the policy or (b) the current rate (declared annually) by the Company. For Options 3, 4, and 5, once annuity payments have begun, the amount of the annuity payments will not change.

No choice of an option may provide for payments of less than $50.00. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The Payee under an option shall be the Insured, if living, and otherwise the Beneficiary.

No option may be chosen without our consent if the proceeds are payable: (1) in any case, except death, before the policy has been in force on the same plan for at least 5 years; or (2) in any case to an executor, administrator, trustee, corporation, partnership, association, or assignee.

A Payee may, by written notice, name and change a Contingent Payee to receive any final amount that would otherwise be payable to the Payee's estate.

**Table for Settlement Options 2B, 3, 4 and 5**
**(Monthly payments for each $1000 of proceeds applied)**

| Option 2B Income for a Fixed Period | | Age of Payee at Birthday Nearest Date of First Payment | Option 3 Life Income with Guaranteed Period | | Option 4 Life Income without Refund | Option 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|
| Period of Years | Payment | | 10 Years | 20 Years | | |
| 1 | 84.46 | 40 | 3.53 | 3.50 | 3.54 | 3.46 |
| 2 | 42.86 | 41 | 3.57 | 3.54 | 3.58 | 3.50 |
| 3 | 28.99 | 42 | 3.62 | 3.58 | 3.63 | 3.54 |
| 4 | 22.06 | 43 | 3.66 | 3.62 | 3.68 | 3.58 |
| 5 | 17.91 | 44 | 3.77 | 3.66 | 3.73 | 3.62 |
| 6 | 15.14 | 45 | 3.76 | 3.71 | 3.78 | 3.66 |
| 7 | 13.16 | 46 | 3.82 | 3.75 | 3.83 | 3.71 |
| 8 | 11.68 | 47 | 3.87 | 3.80 | 3.89 | 3.75 |
| 9 | 10.53 | 48 | 3.93 | 3.85 | 3.95 | 3.80 |
| 10 | 9.61 | 49 | 3.99 | 3.90 | 4.02 | 3.85 |
| 11 | 8.86 | 50 | 4.05 | 3.95 | 4.08 | 3.91 |
| 12 | 8.24 | 51 | 4.12 | 4.01 | 4.15 | 3.96 |
| 13 | 7.71 | 52 | 4.19 | 4.06 | 4.22 | 4.02 |
| 14 | 7.26 | 53 | 4.26 | 4.12 | 4.30 | 4.08 |
| 15 | 6.87 | 54 | 4.34 | 4.18 | 4.38 | 4.15 |
| 16 | 6.53 | 55 | 4.42 | 4.24 | 4.47 | 4.21 |
| 17 | 6.23 | 56 | 4.50 | 4.31 | 4.56 | 4.28 |
| 18 | 5.96 | 57 | 4.59 | 4.37 | 4.66 | 4.36 |
| 19 | 5.73 | 58 | 4.69 | 4.44 | 4.76 | 4.44 |
| 20 | 5.51 | 59 | 4.79 | 4.50 | 4.87 | 4.52 |
| 21 | 5.32 | 60 | 4.89 | 4.57 | 4.99 | 4.60 |
| 22 | 5.15 | 61 | 5.00 | 4.64 | 5.11 | 4.69 |
| 23 | 4.99 | 62 | 5.12 | 4.71 | 5.25 | 4.78 |
| 24 | 4.84 | 63 | 5.24 | 4.77 | 5.39 | 4.88 |
| 25 | 4.71 | 64 | 5.37 | 4.84 | 5.54 | 4.99 |
| 26 | 4.59 | 65 | 5.50 | 4.91 | 5.70 | 5.09 |
| 27 | 4.47 | 66 | 5.64 | 4.97 | 5.87 | 5.21 |
| 28 | 4.37 | 67 | 5.79 | 5.03 | 6.06 | 5.33 |
| 29 | 4.27 | 68 | 5.94 | 5.09 | 6.26 | 5.46 |
| 30 | 4.18 | 69 | 6.10 | 5.14 | 6.47 | 5.59 |
| Annual, Semi-annual or quarterly payments under Option 2B are 11.839, 5.963 and 2.993 respectively times the monthly payments. | | 70 | 6.27 | 5.19 | 6.69 | 5.73 |
| | | 71 | 6.44 | 5.24 | 6.94 | 5.88 |
| | | 72 | 6.61 | 5.28 | 7.20 | 6.04 |
| | | 73 | 6.79 | 5.32 | 7.48 | 6.20 |
| | | 74 | 6.98 | 5.36 | 7.79 | 6.38 |
| | | 75 | 7.16 | 5.38 | 8.11 | 6.56 |
| | | 76 | 7.35 | 5.41 | 8.47 | 6.75 |
| | | 77 | 7.54 | 5.43 | 8.84 | 6.96 |
| | | 78 | 7.72 | 5.45 | 9.25 | 7.17 |
| | | 79 | 7.91 | 5.46 | 9.69 | 7.39 |
| | | 80 | 8.08 | 5.48 | 10.17 | 7.64 |
| | | 81 | 8.25 | 5.49 | 10.68 | 7.88 |
| | | 82 | 8.41 | 5.49 | 11.23 | 8.13 |
| | | 83 | 8.56 | 5.50 | 11.82 | 8.43 |
| | | 84 | 8.71 | 5.50 | 12.46 | 8.70 |
| | | 85 & over | 8.83 | 5.51 | 13.14 | 8.99 |

Options 3, 4 and 5 are available only at the ages shown

U17703A

 **VARIABLE LIFE INSURANCE COMPANY**

---

**SETTLEMENT OPTION PROVISION**
**ACCELERATION OF DEATH BENEFITS FOR TERMINAL ILLNESS**

We agree, subject to the terms and conditions of this Provision and the policy, to make available the payments described below. They will be made as of the Option Date if the Insured becomes terminally ill. Such payments shall be in place of all or a specified portion of the single payment which would otherwise be payable under the policy upon the death of the Insured.

This Provision is not eligible for dividends. The factors we use to compute the Benefit Amount will be set and changed based on our expectations of future experience. We will not change these factors to recoup any prior losses; nor will we change them to distribute past gains under the Provision.

**DEFINITIONS**

"Convertible Proceeds" means the proceeds payable under the policy at the death of the Insured, exclusive of any riders other than riders providing term insurance coverage on the life of the Insured, determined as if the Insured had died on the Option Date. Such proceeds will be net of any indebtedness. In addition, we reserve the right, but will not be required, to take into account either or both of the following in determining the Convertible Proceeds: (i) scheduled changes of policy and rider proceeds; and (ii) expected future premiums.

"Terminal Illness" means that we have received evidence satisfactory to us that the Insured's life expectancy is 24 months or less. Such evidence must include certification by a physician of the Insured's life expectancy.

"Benefit Amount" means the amount we will pay under this settlement option due to Terminal Illness. We will compute it as of the Option Date. It will be based on the percentage of the Convertible Proceeds you elect to place under the option and will be reduced by the discount percentage applicable to the policy on the Option Date. Such discount percentage will be determined by us and may be changed by us from time to time, but shall never exceed any maximum imposed by applicable law or regulation. In addition, we reserve the right, but will not be required, to impose an expense charge no greater than $250.

The Benefit Amount, as finally computed, will be at least as great as the surrender value of the policy on the Option Date multiplied by the percentage of the Convertible Proceeds placed under the applicable option.

"Option Date" means the date on which we are in receipt of your election to receive the Benefit Amount together with all required documents completed to our satisfaction.

**METHOD OF PAYMENT**

Upon Terminal Illness you may elect the Benefit Amount. We will place the Benefit Amount in a Money Management Account unless you instruct us otherwise. If you so choose, we will distribute the Benefit Amount in a lump sum or in any other manner that we agree upon.

**EFFECT ON POLICY**

The Convertible Proceeds will be reduced by any amount converted.

If you convert only a portion of your Convertible Proceeds, the policy will remain in force. Any sum insured and any cash value will be reduced in the same proportion as the reduction in Convertible Proceeds. Premiums payable on or after the Option Date will be computed as if the policy had been issued at the reduced amount.

If you convert all of your Convertible Proceeds, all other benefits under the policy based on the Insured's life will end. Any insurance benefits provided for someone other than the Insured under the policy will be administered in accordance with the policy or rider provisions applying to that insurance after the Insured's death.

**CONDITIONS**

Your right to receive payment under this settlement option is subject to the following conditions:

1. The policy must be in force other than as extended term insurance.
2. You must elect the option in writing on a form that meets our requirements.
3. The policy must not be assigned except to us as security for a loan.
4. If you convert only a portion of your Convertible Proceeds, the remaining Convertible Proceeds must be at least $25,000.
5. We reserve the right to set a minimum of no more than $25,000 and a maximum of no less than $1,000,000 on the amount of Convertible Proceeds you may place under option.
6. You must send us the policy.
7. The benefit under this settlement option provides for the accelerated payment of life insurance proceeds and its availability is not intended to cause you to involuntarily invade proceeds ultimately payable to the named beneficiary. Therefore, accelerated death benefit proceeds will be made available to you on a voluntary basis only.

   Accordingly:

   (a) If you are required by law to exercise this settlement option to satisfy the claims of creditors, you are not eligible for this benefit. This applies whether you are in bankruptcy or otherwise.

   (b) If you are required by a government agency to exercise this settlement option in order to apply for, obtain, or retain a government benefit or entitlement, you are not eligible for this benefit.

8. The policy must not have any irrevocable beneficiaries.

**RIGHT TO CANCEL**

If you ask us in writing and send us the policy, we will cancel this Provision.

**Signed for the Company at Boston, Massachusetts.**

*Peter Scavongelli*
Secretary

V069

 Variable Life Insurance Company

---

**ENDORSEMENT**

---

Notwithstanding anything to the contrary, policy loans are available beginning in the first Policy Year, subject to all restrictions, limitations, and conditions provided in accordance with the terms of the policy.

**Signed for the Company at Boston, Massachusetts.**

Secretary

 Variable Life Insurance Company **AMENDMENT TO APPLICATION**

Boston, Massachusetts 02117

**Policy No.   01204737**

**Insured or
Proposed Insured** ████████████

(In this instrument the words "Insured" and "Policy" shall be construed to mean "Annuitant" and "Annuity Contract" if appropriate.)

It is requested that the application with respect to the above-numbered policy be amended as follows:

**OWNER AND BENEFICIARY TO READ: THE** ███████ **FAMILY INSURANCE TRUST.**

**POLICY DETAILS QUESTION 4A TO READ: CASH VALUE ACCUMULATION TEST.**

**QUESTION 10B AND 10C OF APPLICATION  TO READ: $ 2,000,000.**

**Dated**   May 31 2006

**Agency  382**

**Agent No. 53919**

_____
                            **Signature**

_____

**174R(I)VL**